960 F.2d 150
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Innocent TOBI, Defendant-Appellant.
 No. 91-3662.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1992.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal of a criminal sentence challenging the district court's refusal to find that defendant had accepted responsibility and the court's determination of the amount of loss used for calculating the defendant's offense level. We affirm in part and reverse in part, remanding for a recalculation of the amount of loss.
 
 
 2
 * Innocent Tobi obtained and used credit cards by submitting fraudulent applications to the issuing card companies. In mid-1990, Tobi drove from Detroit, where he resided, to Toledo, Ohio, for the purpose of renting mail boxes. Both Tobi and his accomplice, Donald Evans of Brooklyn, New York, filled out applications to rent mail boxes at three different Wrap 'n Ship locations using unauthorized or fictitious names and addresses. After obtaining these mail boxes, Evans mailed out credit card applications from Brooklyn, using the mail box rental addresses and fictitious names and social security numbers. Credit card companies and banks issued credit cards to these fictitious applicants and mailed the cards back to the mail boxes rented by Tobi and Evans. Tobi would drive to Toledo several times a week to pick up mail and would forward the contents by Federal Express to Evans in New York. Sometimes Evans would accompany Tobi, at which time Tobi would be compensated.
 
 
 3
 The credit cards falsely obtained by Tobi and Evans included a Mastercard issued by Society Bank in the name of William Peskoff; a Discover Card issued by Discover Card Services in the name of Myrna Benyishay; and a Mastercard issued by Society Bank in the name of Harry A. Featherstone. Automatic teller machine (ATM) withdrawals were made on the Peskoff Mastercard account in the amount of $1,200 and on the Benyishay Discover Card for $1,000. A check was written, for payment to a fraudulently obtained AT & T Universal Card in the name of Richard Stearns, on the Featherstone Mastercard account for $4,600. The total loss actually sustained was $6,800, although according to government statements, the total credit limits on all the cards obtained through the mail boxes was $71,000.
 
 
 4
 On June 7, 1990, Tobi was arrested immediately after he picked up mail at a Wrap 'n Ship office in Toledo. In his possession were envelopes addressed to various persons, but none of the envelopes were addressed to him. Some of these envelopes contained credit cards. On December 18, 1990, Tobi was charged in a four-count indictment with the use of unauthorized access devices (Counts 1 and 2) and mail fraud (Counts 3 and 4).
 
 
 5
 On April 8, 1991, Tobi appeared before the district court for a scheduled change of plea. However, the district court refused to accept his guilty plea because he denied any criminal culpability for the charged conduct. On the day trial was scheduled to begin, defendant decided to plead guilty to all four counts.
 
 
 6
 Tobi was sentenced to 21 months' imprisonment, three years of supervised release, restitution of $6,800, and a $200 special assessment. The Probation Officer determined that the average probable intended loss, based on the average actual losses on the Society Bank and Discover Cards, was $33,992. In determining the defendant's sentence, the district court accepted the revised presentence report's recommendation, finding that the amount of "loss" under U.S.S.G. § 2F1.1(b)(1) exceeded $20,000 and thus increased the offense level by four. The district court also denied a two-level reduction for acceptance of responsibility. Tobi now appeals his sentence on the issues of the amount of loss and his acceptance of responsibility.
 
 II
 
 7
 The question of whether a defendant has accepted responsibility is a question of fact to be reviewed under the "clearly erroneous" standard. United States v. Snyder, 913 F.2d 300, 305 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991). Under the sentencing guidelines, a defendant may receive a two-level reduction in total offense level "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). The burden is upon the defendant to demonstrate acceptance of responsibility. United States v. Christoph, 904 F.2d 1036, 1040 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 713 (1991). A defendant must prove facts entitling him to such a reduction by a preponderance of the evidence. United States v. Rodriguez, 896 F.2d 1031, 1032 (6th Cir.1990).
 
 
 8
 When appeals involve acceptance of responsibility, appellate courts should recall that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.' Application Note 5, U.S.S.G. § 3E1.1.
 
 
 9
 United States v. Tucker, 925 F.2d 990, 991 (6th Cir.1991).
 
 
 10
 Where a defendant merely pleads guilty, he is not entitled to a reduction for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1(c) Accord United States v. Saenz, 915 F.2d 1046, 1047 (6th Cir.1990); United States v. Guarin, 898 F.2d 1120, 1122 (6th Cir.1990). Appropriate considerations in determining whether a defendant qualifies for an acceptance of responsibility reduction are "voluntary and truthful admission to authorities of involvement in the offense and related conduct...." Commentary, Application Note 1(c), U.S.S.G. § 3E1.1. This circuit has also held that, in addition to voluntary and truthful admission, timeliness of the defendant's conduct of manifesting the acceptance of responsibility is a consideration to be included in determining whether the defendant qualifies for the reduction. United States v. Head, 927 F.2d 1361, 1374 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 144 (1991).
 
 
 11
 We hold that the district court's refusal to find acceptance of responsibility by the defendant was not clearly erroneous. When Tobi appeared on April 8 to enter a plea of guilty, he denied under oath his criminal involvement, which caused the district court to reject his plea. It was not until the day of trial that the defendant changed his mind and admitted his guilt. This plea was entered after the court indicated in chambers that it would permit the government to introduce evidence involving his prior arrest and conviction for a similar credit card scheme. Defendant never gave a voluntary admission of his involvement.
 
 
 12
 The defendant's only argument on appeal on this issue is that he did provide the government with the name of his accomplice both at the time of his arrest and at the April 8 hearing. However, this does not negate his own refusal to admit his own criminal involvement and it is insufficient for us to find that the district court was clearly erroneous in refusing to grant the defendant a reduction for acceptance of responsibility.
 
 III
 
 13
 The district court's calculation of amount of loss is a finding of fact to be reviewed under the "clearly erroneous" standard. See United States v. Robinson, 898 F.2d 1111, 1116 (6th Cir.1990). The question of whether the amount of loss should be determined on the basis of the amount of credit fraudulently made available or the amount of funds fraudulently disbursed is a question of law and is subject to de novo review. United States v. Burns, 894 F.2d 334, 335 (9th Cir.1990).
 
 
 14
 A total of 12 unused credit cards, with a total credit limit of $63,500, was seized in this case. The government contended that the amount of loss should be the combination of the actual loss on the three cards used ($6,800) plus the credit card limits of the unused cards ($63,500) for a total of $70,300. Under the guidelines, if loss exceeds $70,000, the offense level should be increased by six. U.S.S.G. § 2F1.1(b)(1)(G). Defendant contended that amount of loss for guideline purposes should be the actual loss of $6,800, which would result in an increase in the offense level of only two. U.S.S.G. § 2F1.1(b)(1)(C). The probation department determined the loss to be the actual loss ($6,800) plus the intended loss ($27,192, which is the average loss of $2,266 on each of the three used cards multiplied by 12 unused cards). If a loss exceeds $20,000, the guidelines provide for a four-level increase. U.S.S.G. § 2F1.1(b)(1)(E). Defendant argues that the district court's determination of the amount of loss was too speculative while the government argues that it was too conservative.
 
 
 15
 The proper analysis for the calculation of amount of loss is that set forth in Uniteds State v. Derryberry, Nos. 90-6563/91-5005 (6th Cir. Oct. 29, 1991) (unpublished). The commentary to U.S.S.G. § 2F1.1, which deals with fraud or deceit, provides that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if greater than the actual loss." Application Note 7, U.S.S.G. § 2F1.1. It also refers to U.S.S.G. § 2B1.1, which deals with theft, embezzlement, receipt of stolen property and property destruction, for determining valuation of loss.
 
 
 16
 In cases of partially completed conduct, Application Note 2 of U.S.S.G. § 2B1.1 refers us to § 2X1.1, which deal with attempts not covered by a specific offense guideline. Application Note 4 of U.S.S.G. § 2X1.1 provides that where participants "have completed (or have been about to complete but for apprehension or interruption) all of the acts necessary for the successful completion of part, but not all, of the intended offense," the offense level should be the greater of "the offense level for the intended offense minus 3 levels ... or the offense level for the part of the offense which the necessary acts were completed (or about to be completed but for apprehension or interruption)."
 
 
 17
 If the completed act that the defendants intended was to loot every penny possible within the credit limit of the cards they had obtained, the completed act would create a loss of more than $70,000, which would require an increase of six in the offense level. The actual loss was $6,800, which would require an increase of two. Under application note 4, discussed above, the appropriate increase would be the greater of the increase for the completed act minus three (6 - 3 = 3) or the increase for the actual loss (2). Thus, the district court should have increased the base offense level by three, the greater of the two previous calculations.
 
 
 18
 The district court's choice of an increase of four, required by a loss between $20,000 and $40,000, was based on a mistaken notion. The judge computed the completed act value based on a proportionality calculation, and then did not apply the meliorative portion of application note 4 with regard to acts that are only partially completed. The failure to apply that portion of the guidelines is a legal determination, which is subject to de novo review.
 
 
 19
 Should the district court determine that the "intended offense" would not involve completely looting every penny from the credit cards, and would not cause a loss greater than $70,000, it should similarly apply the methodology above to determine the appropriate adjustment to the base offense level.
 
 
 20
 Based on the above, we AFFIRM the district court's denial of acceptance of responsibility by the defendant, but we REVERSE the district court's four-level increase in the offense level and REMAND for resentencing.