

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2001

# United States v. Youla

Precedential or Non-Precedential:

Docket 99-5151

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Youla" (2001). *2001 Decisions.* Paper 31.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/31

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 23, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-5151

UNITED STATES OF AMERICA

v.

MOHAMED YOULA,
a/k/a MOHAMED FOFANA,

     Mohamed Youla,
       Appellant

On Appeal From the United States District Court
For the District of Delaware
(D.C. Crim. No. 98-cr-00106)
District Judge: Honorable Murray M. Schwartz

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2000

Before: BECKER, Chief Judge, NYGAARD
and AMBRO, Circuit Judges

(Filed February 23, 2001)

     Randall D. Unger
     Suite 2702
     125 Queens Boulevard
     Kew Gardens, NY 11415

     Attorney for Appellant
     Mohamed Youla

Mohamed Youla
Reg. No. 44304-054
LSCI Allenwood
P.O. Box 1000
White Deer, PA 17887

Appellant, Pro Se

Edmond Falgowski
Office of the United States Attorney
1201 Market Street
P.O. Box 2046, Suite 1100
Wilmington, DE 19899-2046

Attorney for Appellee
United States of America

OPINION OF THE COURT

AMBRO, Circuit Judge.

I.

Appellant-defendant Mohamed Youla ("Youla") pled guilty to count three of a four-count indictment, charging him with falsely representing a Social Security number to be his own for the purpose of defrauding MBNA America Bank, National Association ("MBNA"), in violation of 42 U.S.C. S 408(a)(7)(B), and 18 U.S.C. S 2. Youla was sentenced to thirty-three months imprisonment, a $6000 fine, a $100 assessment, and a three year term of supervised release. He argues on appeal that the District Court for the District of Delaware erred in accepting his plea, in its calculation of the intended loss as $400,000, and in its four-level sentencing increase for his leadership role in criminal activity that involved five or more participants. Youla's counsel filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that Youla's appeal raises no nonfrivolous issues. After reviewing counsel's Anders brief, we are not persuaded. Finding arguable merit to the appeal, we shall discharge current counsel, appoint substitute counsel, restore the case to the

2

calendar, and order supplemental briefing in accordance with this opinion.

II.

In February 1998, Youla and Sidiky Mara ("Mara") met with an FBI cooperating witness, known to them as Moe, to buy credit cards in a financial fraud scheme. Moe purported to have a cousin who worked for MBNA, a national banking association, and who could secur e credit cards without going through the pr oper application procedures. In exchange for twenty cr edit cards, each with a credit limit of $50,000, Youla and Mara were to pay Moe $20,000. During meetings with Moe, Youla intr oduced Jibril Koita and Eric Washington into the scheme to defraud MBNA.

While small withdrawals on the cards could be made at an automated teller machine ("ATM"), in order to obtain larger cash advances the recipients would need appropriate identification, including Social Security numbers and addresses. Youla and Mara provided Moe with twenty names and Social Security numbers, several of the names and eight of the numbers being false. With this information, MBNA investigators and the FBI opened twenty cr edit card accounts with a $50,000 credit limit for each.

On February 26, 1998, Youla and Mara dr ove from New York City to Wilmington, Delawar e according to plan. Youla, Mara, and Moe met with an undercover FBI agent posing as Moe's cousin, who showed them twenty credit car ds. Youla and Mara tested one of the cards by withdrawing $500 from a nearby ATM. Satisfied that the cards were activated, the two were to return to Wilmington the next day with $20,000 for the credit cards.

After the FBI agent left, Mara confided in Moe that he had secretly kept the cardboard flyer attached to the credit card, which displayed the card number . Mara and Youla subsequently left Moe, and Moe then reported the theft to MBNA whereupon the card was immediately deactivated. Meanwhile, Youla and Mara attempted to use the card, only to learn that it had been deactivated. Suspecting that Moe was involved with law enforcement, Youla and Mara did not

3

return to Wilmington the next day. Over the next eleven days, MBNA received numerous phone calls from individuals who gave names from the list Youla and Mara provided Moe, all claiming that their cards were lost or stolen. MBNA determined that most of the calls were fraudulent, but did send out three replacement cards. One replacement card was sent to Eric Washington, but this card was never activated after MBNA determined that the account was fraudulent. The other two replacement cards went to a Sidiky Mala,[1] and were subsequently deactivated after MBNA investigated a $1.00 purchase recorded at a gas station. In sum, a total of $501 was withdrawn or spent on the credit accounts.

On October 13, 1998, a grand jury for the District of Delaware handed down a four count indictment charging Youla with bank fraud in violation of 18 U.S.C. S 1344 (Count One), conspiracy to commit bank fraud in violation of 18 U.S.C. S 371 (Count Two), and use of a false Social Security number in violation of 42 U.S.C. S 408 (Counts Three and Four).

On November 25, 1998, Youla appeared with counsel in the District Court for the purpose of entering a guilty plea to Count Two of the indictment -- conspiracy to commit bank fraud. The District Court refused to accept the plea because during a colloquy Youla denied an intent to defraud MBNA.

On December 4, 1998, Youla again appeared with counsel in District Court for the purpose of entering a guilty plea. Pursuant to a plea agreement, Youla entered a guilty plea to Count Three of the indictment charging fraudulent use of a Social Security number to open a credit card account. The District Court entered into a lengthy colloquy with Youla to ensure that he understood the charge to which he was pleading guilty, and to ensure that the plea was being entered voluntarily.

Satisfied that Youla understood his Constitutional rights and that his decision to plead guilty was knowing and

_____

1. Mara had given the alias of "Sidiky Mala" to obtain credit cards for two accounts.

voluntary, the District Court accepted the plea, and sentenced Youla on February 26, 1999 to a ter m of thirty-three months imprisonment, a $6000 fine, a $100 assessment, and a three year term of supervised release. In arriving at this sentence, the District Court set the base offense level at six in accordance withS 2F1.1(a) of the U.S. Sentencing Guidelines Manual ("Sentencing Guidelines"). To that, the District Court added nine levels for the highest possible intended loss amount of $400,000 in accor dance with S 2F1.1(b)(1)(J) of the Sentencing Guidelines, which represents the number of false Social Security numbers given to secure eight credit cards, each with a credit limit of $50,000. In addition, the District Court added two levels for more than minimal planning in accor dance with S 2F1.1(b)(2)(A) of the Sentencing Guidelines and four levels for being an organizer and leader of criminal activity that involved five or more participants underS 3B1.1 of the Sentencing Guidelines. Finally, the District Court subtracted three levels for acceptance of r esponsibility under S 3E1.1(a) and (b) of the Sentencing Guidelines, and calculated the total adjusted offense level as eighteen.

III.

A case such as this presents counsel with the competing interests of zealous advocacy for one's client, and the proscription against pressing frivolous ar guments to the court. In Anders, the Supreme Court established guidelines for a lawyer seeking to withdraw from a case when the indigent criminal defendant he represents wishes to pursue frivolous arguments on appeal. Presenting what amounts to a no-merit letter devoid of analysis will not suffice. Id. at 745.

> Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requir es that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief

5

> referring to anything in the recor d that might arguably
> support the appeal.

Id. at 744. Such "conscientious examination" is grounded
in the Constitutional requirement of substantial equality
and fair process, which the Court notes "can only be
attained where counsel acts in the role of an active
advocate in behalf of his client, as opposed to that of
amicus curiae." Id.; see also Griffin v. Illinois, 351 U.S. 12,
20 (1956) (stating that equal justice demands that destitute
defendants be afforded adequate appellate review).

This Court's role is then to decide whether the case is
wholly frivolous. If so, the Court can grant counsel's motion
to withdraw and dismiss the appeal under federal law, or
proceed to a decision on the merits if state law so requires.
Anders, 386 U.S. at 744. "On the other hand, if it finds any
of the legal points arguable on their merits (and therefore
not frivolous) it must, prior to decision, af ford the indigent
the assistance of counsel to argue the appeal." Id. The
Supreme Court recently explained in Smith v. Robbins, 120
S. Ct. 746, 753 (2000), that the Anders guidelines are only
suggestive, not prescriptive. See also United States v.
Marvin, 211 F.3d 778, 779 (3d Cir . 2000).

Third Circuit Local Appellate Rule 109.2(a) reflects the
guidelines the Supreme Court promulgated in Anders to
assure that indigent clients receive adequate and fair
representation.

> Where, upon review of the district court record, trial
> counsel is persuaded that the appeal presents no issue
> of even arguable merit, trial counsel mayfile a motion
> to withdraw and supporting brief pursuant to Anders v.
> California, 386 U.S. 738 (1967), which shall be served
> upon the appellant and the United States. The United
> States shall file a brief in response. Appellant may also
> file a brief in response pro se.  After all briefs have been
> filed, the clerk will refer the case to a merits panel. If
> the panel agrees that the appeal is without merit, it will
> grant trial counsel's Anders motion, and dispose of the
> appeal without appointing new counsel. If the panel
> finds arguable merit to the appeal, it will discharge
> current counsel, appoint substitute counsel, r estore

6

        the case to the calendar, and order supplemental
        briefing.

Third Circuit L.A.R. 109.2(a).

The Court's inquiry when counsel submits an Anders
brief is thus twofold: (1) whether counsel adequately
fulfilled the rule's requirements; and (2) whether an
independent review of the record pr esents any nonfrivolous
issues. Marvin, 211 F.3d at 780 (citing United States v.
Tabb, 125 F.3d 583 (7th Cir. 1997); and Wagner v. United
States, 103 F.3d 551 (7th Cir 1996)). This Court, following
the Seventh Circuit's analysis in T abb, established the first
inquiry as dispositive: "except in those cases in which
frivolousness is patent, we will reject briefs . . . in which
counsel argue the purportedly frivolous issues aggressively
without explaining the faults in the arguments, as well as
those where we are not satisfied that counsel adequately
attempted to uncover the best arguments for his or her
client." Marvin, 211 F.3d at 781. In this case, we reject the
Anders brief for the latter reason.

A. Adequacy of Counsel's Anders Brief

The duties of counsel when preparing an Anders brief are
(1) to satisfy the court that counsel has thor oughly
examined the record in search of appealable issues, and (2)
to explain why the issues are frivolous. Marvin, 211 F.3d at
780 (citing Tabb, 125 F.3d at 585, 586). Counsel need not
raise and reject every possible claim. However , at a
minimum, he or she must meet the "conscientious
examination" standard set forth in Anders. Id.

In his Anders brief before this Court, counsel's analysis
of the merits of the potential appealable issues constituted
two pages. With regard to sentencing, counsel's
examination cites no case law, and is limited to the
following:

        The sentence imposed upon the appellant also
        appears to have been without legal error . Based upon
        the calculation that the applicable base offense level
        was 18, with a criminal history category I, the
        imposition of a sentence of imprisonment of 33 months

7

fell within the applicable guideline range. Thus, there is simply no basis for concluding that the District Court's sentencing decision constituted an abuse of discretion.

Appellant's Br. Pursuant to Anders v. California at 4. Counsel fails to mention that the Presentence Investigation Report ("PIR") recommended an adjusted of fense level of sixteen, nor does he explain the discrepancy between the District Court's calculation and the PIR. Mor eover, counsel does not examine the factual or legal bases for the three upward adjustments of fifteen levels that the District Court made in determining Youla's sentence. The result was an increase in the guideline range of twenty-one to twenty-seven months recommended in the PIR to a range of twenty-seven to thirty-three months, and a sentence at the top of the latter range.

In sharp contrast, Youla's twenty-six page pro se brief presents three issues for appeal, two alleging errors in the District Court's application of the Sentencing Guidelines. While the length of a brief does not necessarily determine the merit of its arguments, we do not believe that Youla's counsel "mention[s] all the issues raised by his client and assure[s] us that he has consider ed them and found them patently without merit." Marvin, 211 F .3d at 781. Moreover, Youla's counsel has not specifically set forth why he abandoned any sentencing objections, particularly those that Youla argues in his pr o se brief. In sum, as in Marvin, "[c]ounsel simply has not provided sufficient indicia that he thoroughly searched the recor d and the law in service of his client so that we might confidently consider only those objections raised." Id. Therefor e, we reject the Anders brief as inadequate.

B. Arguable Merits to the Appeal

The Seventh Circuit in Wagner clarified the standard for determining whether to accept counsel's statement, via an Anders motion and brief, that there ar e no nonfrivolous grounds for appeal. Specifically, the Court considered how deeply the appellate courts must explore the r ecord to determine whether to grant the motion. See Wagner, 103

8

F.3d at 552. The Wagner court rejected a complete scouring of the record by the courts and identification of the issues for the defendant -- effectively serving as his lawyer -- for while in some cases it may help the defendant, in others it may hurt him. See id. Where the Anders brief initially appears adequate on its face, the proper course"is for the appellate court to be guided in reviewing the r ecord by the Anders brief itself." Id. at 553. However, that is not the status of the brief here.

Although the Anders brief does not assist us, we note that Youla's pro se brief does provide this Court with some guidance concerning the issues he wishes to raise on appeal. Although not the brief of counsel, we find that it "explains the nature of the case and . . . discusses the issues that the type of case might be expected to involve." In such a circumstance, we extrapolate fr om Wagner's recommendation that we confine our scrutiny to those portions of the record identified by an adequate Anders brief, see id., so that our examination of the record is informed by those issues raised in Appellant's pro se brief.

An appeal on a matter of law is frivolous wher e "[none] of the legal points [are] arguable on their merits." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (citing Anders, 386 U.S. at 744). After examining the record, we find that Youla has raised a nonfrivolous issue with respect to his sentencing, particularly whether the District Court corr ectly determined the intended loss at $400,000 based the credit limit of eight credit cards.2 When applying S 2F1.1 of the Sentencing Guidelines, courts are bound by the Commentary thereto. See United States v. Geevers, 226 F.3d 186, 189 (3d Cir. 2000) (citing Stinson v. United States, 508 U.S. 36, 38 (1993)). Application Note 8 of the corresponding Commentary provides in relevant part:

_____

2. With respect to the remaining arguments advanced by Youla, namely that the District Court erred in allowing Y oula to plead guilty and in its
finding that Youla's offense level should be increased four levels pursuant to S 3B1.1 of the Sentencing Guidelines for his being an organizer or leader of criminal activity involving five or more participants,
we agree with counsel's Anders brief that they represent frivolous issues without arguable merit.

9

> Consistent with the provisions of S 2X1.1 (Attempt,
> Solicitation, or Conspiracy), if an intended loss that the
> defendant was attempting to inflict can be deter mined,
> this figure will be used if it is greater than the actual
> loss.

Sentencing Guidelines S 2F1.1, cmt. n.8 (1998). In S 2X1.1,
judges are instructed to calculate the of fense level for an
attempted offense by taking the number for the completed
offense and subtracting three. These sections might be
applied to credit card fraud in the following way: if the
court determines that the defendant intended to use the
stolen credit cards to their maximum limits but did not do
so, the sum of those credit limits is plugged into
S 2F1.1(b)(1) to determine the level that would apply if the
crime had been completed, and then three is subtracted
from this number per S 2X1.1.3  See United States v. Tobi,
No. 91-3662, 1992 WL 78109 (6th Cir. Apr . 17, 1992);
United States v. Derryberry, Nos. 90-6563, 91-5005, 1991
WL 224061 (6th Cir. Oct. 29, 1991). W e believe that, in
light of the Commentary's reference toS 2X1.1, there is
arguable merit to Youla's sentencing claim.

Where counsel's brief is inadequate, the Seventh Circuit
recommends denying the Anders motion and either
directing counsel to file a new brief or discharging counsel
and appointing a new lawyer for the defendant. See
Wagner, 103 F.3d at 553. Our Local Appellate Rule 109.2(a)
directs us to the second course -- we dischar ge current
counsel when we find arguable merit to the appeal.

For the foregoing reasons, we reject the Anders brief filed
by counsel in this case. The motion of counsel for leave to
withdraw will be granted. See United States v. Orozco, 98
F.3d 105, 106, n.2 (3d Cir. 1996) (granting counsel's Anders

_____

3. For example, S 2X1.1(b)(1) provides with respect to an attempted
offense:

> If an attempt, decrease by 3 levels, unless the defendant completed
> all the acts the defendant believed necessary for successful
> completion of the substantive offense or the circumstances
> demonstrate that the defendant was about to complete all such acts
> but for apprehension or interruption by some similar event beyond
> the defendant's control.

10

motion to withdraw where the brief was inadequate, and appointing new appellate counsel to examine the nonfrivolous issue). In accordance with our Local Appellate Rule 109.2(a), we shall order the Clerk to discharge current counsel, appoint substitute counsel, restor e the case to the calendar, and fix a subsequent briefing schedule.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

11