**UNITED STATES of America,**

v.

**Mohamed YOULA, a/k/a Mohamed Fofana,**

**Mohamed Youla, Appellant.**

**No. 99–5151.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a)
Sept. 13, 2000.

Filed Feb. 23, 2001.

Randall D. Unger, Kew Gardens, NY, Attorney for Appellant, Mohamed Youla.

Mohamed Youla, Reg. No. 44304–054, LSCI Allenwood, White Deer, PA, Appellant, Pro Se.

Edmond Falgowski, Office of the United States Attorney, Wilmington, DE, Attorney for Appellee, United States of America.

Before BECKER, Chief Judge, NYGAARD and AMBRO, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

### I.

Appellant-defendant Mohamed Youla ("Youla") pled guilty to count three of a four-count indictment, charging him with falsely representing a Social Security number to be his own for the purpose of defrauding MBNA America Bank, National Association ("MBNA"), in violation of 42 U.S.C. § 408(a)(7)(B), and 18 U.S.C. § 2. Youla was sentenced to thirty-three months imprisonment, a $6000 fine, a $100 assessment, and a three year term of supervised release. He argues on appeal

that the District Court for the District of Delaware erred in accepting his plea, in its calculation of the intended loss as $400,000, and in its four -level sentencing increase for his leadership role in criminal activity that involved five or more participants. Youla's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that Youla's appeal raises no nonfrivolous issues. After reviewing counsel's *Anders* brief, we are not persuaded. Finding arguable merit to the appeal, we shall discharge current counsel, appoint substitute counsel, restore the case to the calendar, and order supplemental briefing in accordance with this opinion.

## II.

In February 1998, Youla and Sidiky Mara ("Mara") met with an FBI cooperating witness, known to them as Moe, to buy credit cards in a financial fraud scheme. Moe purported to have a cousin who worked for MBNA, a national banking association, and who could secure credit cards without going through the proper application procedures. In exchange for twenty credit cards, each with a credit limit of $50,000, Youla and Mara were to pay Moe $20,000. During meetings with Moe, Youla introduced Jibril Koita and Eric Washington into the scheme to defraud MBNA.

While small withdrawals on the cards could be made at an automated teller machine ("ATM"), in order to obtain larger cash advances the recipients would need appropriate identification, including Social Security numbers and addresses. Youla and Mara provided Moe with twenty names and Social Security numbers, several of the names and eight of the numbers being false. With this information, MBNA investigators and the FBI opened twenty credit card accounts with a $50,000 credit limit for each.

On February 26, 1998, Youla and Mara drove from New York City to Wilmington, Delaware according to plan. Youla, Mara, and Moe met with an undercover FBI agent posing as Moe's cousin, who showed them twenty credit cards. Youla and Mara tested one of the cards by withdrawing $500 from a nearby ATM. Satisfied that the cards were activated, the two were to return to Wilmington the next day with $20,000 for the credit cards.

After the FBI agent left, Mara confided in Moe that he had secretly kept the cardboard flyer attached to the credit card, which displayed the card number. Mara and Youla subsequently left Moe, and Moe then reported the theft to MBNA whereupon the card was immediately deactivated. Meanwhile, Youla and Mara attempted to use the card, only to learn that it had been deactivated. Suspecting that Moe was involved with law enforcement, Youla and Mara did not return to Wilmington the next day. Over the next eleven days, MBNA received numerous phone calls from individuals who gave names from the list Youla and Mara provided Moe, all claiming that their cards were lost or stolen. MBNA determined that most of the calls were fraudulent, but did send out three replacement cards. One replacement card was sent to Eric Washington, but this card was never activated after MBNA determined that the account was fraudulent. The other two replacement cards went to a Sidiky Mala,[1] and were subsequently deactivated after MBNA investigated a $1.00 purchase recorded at a gas station. In sum, a total of $501 was withdrawn or spent on the credit accounts.

On October 13, 1998, a grand jury for the District of Delaware handed down a four count indictment charging Youla with bank fraud in violation of 18 U.S.C. § 1344 (Count One), conspiracy to commit bank fraud in violation of 18 U.S.C. § 371 (Count Two), and use of a false Social Security number in violation of 42 U.S.C. § 408 (Counts Three and Four).

---

1. Mara had given the alias of "Sidiky Mala" to obtain credit cards for two accounts.

On November 25, 1998, Youla appeared with counsel in the District Court for the purpose of entering a guilty plea to Count Two of the indictment—conspiracy to commit bank fraud. The District Court refused to accept the plea because during a colloquy Youla denied an intent to defraud MBNA.

On December 4, 1998, Youla again appeared with counsel in District Court for the purpose of entering a guilty plea. Pursuant to a plea agreement, Youla entered a guilty plea to Count Three of the indictment charging fraudulent use of a Social Security number to open a credit card account. The District Court entered into a lengthy colloquy with Youla to ensure that he understood the charge to which he was pleading guilty, and to ensure that the plea was being entered voluntarily.

Satisfied that Youla understood his Constitutional rights and that his decision to plead guilty was knowing and voluntary, the District Court accepted the plea, and sentenced Youla on February 26, 1999 to a term of thirty-three months imprisonment, a $6000 fine, a $100 assessment, and a three year term of supervised release. In arriving at this sentence, the District Court set the base offense level at six in accordance with § 2F1.1(a) of the U.S. Sentencing Guidelines Manual ("Sentencing Guidelines"). To that, the District Court added nine levels for the highest possible intended loss amount of $400,000 in accordance with § 2F1.1(b)(1)(J) of the Sentencing Guidelines, which represents the number of false Social Security numbers given to secure eight credit cards, each with a credit limit of $50,000. In addition, the District Court added two levels for more than minimal planning in accordance with § 2F1.1(b)(2)(A) of the Sentencing Guidelines and four levels for being an organizer and leader of criminal activity that involved five or more participants under § 3B1.1 of the Sentencing Guidelines. Finally, the District Court subtracted three

levels for acceptance of responsibility under § 3E1.1(a) and (b) of the Sentencing Guidelines, and calculated the total adjusted offense level as eighteen.

### III.

■ A case such as this presents counsel with the competing interests of zealous advocacy for one's client, and the proscription against pressing frivolous arguments to the court. In *Anders*, the Supreme Court established guidelines for a lawyer seeking to withdraw from a case when the indigent criminal defendant he represents wishes to pursue frivolous arguments on appeal. Presenting what amounts to a no-merit letter devoid of analysis will not suffice. *Id.* at 745, 87 S.Ct. 1396.

> Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

*Id.* at 744, 87 S.Ct. 1396. Such "conscientious examination" is grounded in the Constitutional requirement of substantial equality and fair process, which the Court notes "can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.*" *Id.*; *see also Griffin v. Illinois*, 351 U.S. 12, 20, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (stating that equal justice demands that destitute defendants be afforded adequate appellate review).

■ This Court's role is then to decide whether the case is wholly frivolous. If so, the Court can grant counsel's motion to withdraw and dismiss the appeal under federal law, or proceed to a decision on the merits if state law so requires. *Anders*,

386 U.S. at 744, 87 S.Ct. 1396. "On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Id.* The Supreme Court recently explained in *Smith v. Robbins,* 528 U.S. 259, 120 S.Ct. 746, 753, 145 L.Ed.2d 756 (2000), that the *Anders* guidelines are only suggestive, not prescriptive. *See also United States v. Marvin,* 211 F.3d 778, 779 (3d Cir.2000).

Third Circuit Local Appellate Rule 109.2(a) reflects the guidelines the Supreme Court promulgated in *Anders* to assure that indigent clients receive adequate and fair representation.

> Where, upon review of the district court record, trial counsel is persuaded that the appeal presents no issue of even arguable merit, trial counsel may file a motion to withdraw and supporting brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which shall be served upon the appellant and the United States. The United States shall file a brief in response. Appellant may also file a brief in response *pro se.* After all briefs have been filed, the clerk will refer the case to a merits panel. If the panel agrees that the appeal is without merit, it will grant trial counsel's *Anders* motion, and dispose of the appeal without appointing new counsel. If the panel finds arguable merit to the appeal, it will discharge current counsel, appoint substitute counsel, restore the case to the calendar, and order supplemental briefing.

Third Circuit L.A.R. 109.2(a).

█ The Court's inquiry when counsel submits an *Anders* brief is thus twofold: (1) whether counsel adequately fulfilled the rule's requirements; and (2) whether an independent review of the record presents any nonfrivolous issues. *Marvin,* 211 F.3d at 780 (citing *United States v. Tabb,* 125 F.3d 583 (7th Cir.1997); and *United States v. Wagner,* 103 F.3d 551 (7th Cir.1996)). This Court, following the Seventh Circuit's

analysis in *Tabb,* established the first inquiry as dispositive: "except in those cases in which frivolousness is patent, we will reject briefs ... in which counsel argue the purportedly frivolous issues aggressively without explaining the faults in the arguments, as well as those where we are not satisfied that counsel adequately attempted to uncover the best arguments for his or her client." *Marvin,* 211 F.3d at 781. In this case, we reject the *Anders* brief for the latter reason.

### A.   Adequacy of Counsel's *Anders* Brief

█ The duties of counsel when preparing an *Anders* brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous. *Marvin,* 211 F.3d at 780 (citing *Tabb,* 125 F.3d at 585, 586). Counsel need not raise and reject every possible claim. However, at a minimum, he or she must meet the "conscientious examination" standard set forth in *Anders. Id.*

In his *Anders* brief before this Court, counsel's analysis of the merits of the potential appealable issues constituted two pages. With regard to sentencing, counsel's examination cites no case law, and is limited to the following:

> The sentence imposed upon the appellant also appears to have been without legal error. Based upon the calculation that the applicable base offense level was 18, with a criminal history category I, the imposition of a sentence of imprisonment of 33 months fell within the applicable guideline range. Thus, there is simply no basis for concluding that the District Court's sentencing decision constituted an abuse of discretion.

Appellant's Br. Pursuant to *Anders v. California* at 4. Counsel fails to mention that the Presentence Investigation Report ("PIR") recommended an adjusted offense level of sixteen, nor does he explain the discrepancy between the District Court's calculation and the PIR. Moreover, counsel

does not examine the factual or legal bases for the three upward adjustments of fifteen levels that the District Court made in determining Youla's sentence. The result was an increase in the guideline range of twenty-one to twenty-seven months recommended in the PIR to a range of twenty-seven to thirty-three months, and a sentence at the top of the latter range.

In sharp contrast, Youla's twenty-six page *pro se* brief presents three issues for appeal, two alleging errors in the District Court's application of the Sentencing Guidelines. While the length of a brief does not necessarily determine the merit of its arguments, we do not believe that Youla's counsel "mention[s] all the issues raised by his client and assure[s] us that he has considered them and found them patently without merit." *Marvin*, 211 F.3d at 781. Moreover, Youla's counsel has not specifically set forth why he abandoned any sentencing objections, particularly those that Youla argues in his *pro se* brief. In sum, as in *Marvin*, "[c]ounsel simply has not provided sufficient indicia that he thoroughly searched the record and the law in service of his client so that we might confidently consider only those objections raised." *Id.* Therefore, we reject the *Anders* brief as inadequate.

### B. Arguable Merits to the Appeal

■■■ The Seventh Circuit in *Wagner* clarified the standard for determining whether to accept counsel's statement, via an *Anders* motion and brief, that there are no nonfrivolous grounds for appeal. Specifically, the Court considered how deeply the appellate courts must explore the record to determine whether to grant the motion. *See Wagner*, 103 F.3d at 552. The *Wagner* court rejected a complete scouring of the record by the courts and identification of the issues for the defen-

dant—effectively serving as his lawyer— for while in some cases it may help the defendant, in others it may hurt him. *See id.* Where the *Anders* brief initially appears adequate on its face, the proper course "is for the appellate court to be guided in reviewing the record by the *Anders* brief itself." *Id.* at 553. However, that is not the status of the brief here.

Although the *Anders* brief does not assist us, we note that Youla's *pro se* brief does provide this Court with some guidance concerning the issues he wishes to raise on appeal. Although not the brief of counsel, we find that it "explains the nature of the case and ... discusses the issues that the type of case might be expected to involve." In such a circumstance, we extrapolate from *Wagner's* recommendation that we confine our scrutiny to those portions of the record identified by an adequate *Anders* brief, *see id.*, so that our examination of the record is informed by those issues raised in Appellant's *pro se* brief.

■■■ An appeal on a matter of law is frivolous where "[none] of the legal points [are] arguable on their merits." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (citing *Anders*, 386 U.S. at 744, 87 S.Ct. 1396). After examining the record, we find that Youla has raised a nonfrivolous issue with respect to his sentencing, particularly whether the District Court correctly determined the intended loss at $400,000 based the credit limit of eight credit cards.[2] When applying § 2F1.1 of the Sentencing Guidelines, courts are bound by the Commentary thereto. *See United States v. Geevers*, 226 F.3d 186, 189 (3d Cir.2000) (citing *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)). Application Note 8 of the corre-

---

**2.** With respect to the remaining arguments advanced by Youla, namely that the District Court erred in allowing Youla to plead guilty and in its finding that Youla's offense level should be increased four levels pursuant to § 3B1.1 of the Sentencing Guidelines for his

being an organizer or leader of criminal activity involving five or more participants, we agree with counsel's *Anders* brief that they represent frivolous issues without arguable merit.

sponding Commentary provides in relevant part:

> Consistent with the provisions of S 2X1.1 (Attempt, Solicitation, or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.

Sentencing Guidelines § 2F1.1, cmt. n. 8 (1998).. In § 2X1.1, judges are instructed to calculate the offense level for an attempted offense by taking the number for the completed offense and subtracting three. These sections might be applied to credit card fraud in the following way: if the court determines that the defendant intended to use the stolen credit cards to their maximum limits but did not do so, the sum of those credit limits is plugged into § 2F1.1(b)(1) to determine the level that would apply if the crime had been completed, and then three is subtracted from this number per § 2X1.1.[3] *See United-ed States v. Tobi*, No. 91-3662, 1992 WL 78109 (6th Cir. Apr.17, 1992); *United States v. Derryberry*, Nos. 90-6563, 91-5005, 1991 WL 224061 (6th Cir. Oct.29, 1991). We believe that, in light of the Commentary's reference to § 2X1.1, there is arguable merit to Youla's sentencing claim.

Where counsel's brief is inadequate, the Seventh Circuit recommends denying the *Anders* motion and either directing counsel to file a new brief or discharging counsel and appointing a new lawyer for the defendant. *See Wagner*, 103 F.3d at 553. Our Local Appellate Rule 109.2(a) directs us to the second course—we discharge current counsel when we find arguable merit to the appeal.

For the foregoing reasons, we reject the *Anders* brief filed by counsel in this case. The motion of counsel for leave to withdraw will be granted. *See United States*

*v. Orozco*, 98 F.3d 105, 106, n. 2 (3d Cir. 1996) (granting counsel's Anders motion to withdraw where the brief was inadequate, and appointing new appellate counsel to examine the nonfrivolous issue). In accordance with our Local Appellate Rule 109.2(a), we shall order the Clerk to discharge current counsel, appoint substitute counsel, restore the case to the calendar, and fix a subsequent briefing schedule.

---

3. For example, § 2X1.1(b)(1) provides with respect to an attempted offense:

> If an attempt, decrease by 3 levels, unless the defendant completed all the acts the defendant believed necessary for successful

completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control.