*767 OPINION
POLLAK, District Judge.
I.
Ryan J. Craig (“Craig”) has filed a pro se brief in this appeal from his conviction of two counts of wire fraud in violation of 18 U.S.C. § 1341 and one count of failure to appear at trial in violation of 18 U.S.C. § 3146. His current counsel has moved for permission to withdraw from representation pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493 (1967). We conclude that counsel has fulfilled the requirements of Third Circuit Local Appellate Rule 109.2(a) and that an independent review of Craig’s pro se brief as well as the record has failed to reveal any additional non-frivolous issues. We accordingly will grant defense counsel’s motion to withdraw and will affirm the District Court’s judgment.
II.
We write primarily for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.
The government presented evidence showing that Craig sold non-existent merchandise through e-Bay, an internet auction website that serves as a clearinghouse for individual sellers to list items for sale.[1] Craig used his grandmother’s personal identification information to establish a seller’s account on e-Bay. Craig, with the help of accomplices, then sold items using this account, keeping the proceeds from the completed sales — which were paid to him by way of Western Union money orders — without delivering the goods promised to their respective buyers.
David Carlson, a fraud investigation supervisor employed by e-Bay, testified for the government that in order to set up an account on the e-Bay website, a user must provide a street address, a phone number, and an e-mail address. (App.132-33.) Carlson also testified that Craig supplied e-Bay with two credit card numbers, registered to his grandmother, which could be used to bill the user account for service charges associated with using e-Bay. (App. 139-140.) At the time of Craig’s arrest, police recovered from Craig a blank Western Union form and a piece of paper containing his grandmother’s name, date of birth, social security number, credit card numbers, and bank account information.
Following the jury’s verdict, the Probation Office prepared a Pre-Sentence Investigation Report (“PSR”) proposing a recommended Sentencing Guidelines range of 100-125 months of incarceration, reflecting a total offense level of 24 and a criminal history category of VI.[2] To arrive at that total offense level, the PSR applied the following guidelines adjustments: an eight-level enhancement for a loss amount exceeding $70,000 but not more than $120,000, pursuant to U.S.S.G. § 2Bl.l(b)(l)(E); a four-level enhancement for 50 or more victims, pursuant to § 2B1.1(b)(2)(B); a two-level enhancement for unauthorized use of any means of identification to produce another means of identification, pursuant to § 2Bl.l(b)(9)(C)(i); and a two-level enhancement for role as leader, pursuant to § 3B1.1.
*768 Craig objected to the sentencing enhancements. The District Court sustained Craig’s objections in part, determining that the number of victims should be reduced to 14 (reducing the applicable sentencing enhancement from four points to two points) and that the loss amount should be reduced to more than $10,000 but less than $30,000 (reducing the applicable sentencing enhancement from eight points to four points). The District Court overruled Craig’s other objections and thus found a total offense level of 18 with a criminal history category of VI, resulting in a guidelines range of 57-71 months of incarceration. The District Court sentenced Craig to 71 months: fifty-nine months for each wire fraud conviction, to be served concurrently, and 12 months for the failure to appear conviction, to be served consecutively to the wire fraud sentences.
III.
Appellant’s counsel has moved this Court for leave to withdraw because, in counsel’s view, appellant appears to lack any issue of arguable merit. See Local Appellate Rule 109.2; Anders,[3] Appellant, meanwhile, has filed a separate brief pro se in support of his appeal. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).
If a criminal defendant wishes to appeal but counsel, after thorough review of the record, cannot find any appealable issue, counsel may file what is known as an Anders brief. Local Appellate Rule 109.2(a) reflects the Third Circuit’s implementation of Anders:
Where, upon review of the district court record, trial counsel is persuaded that the appeal presents no issue of even arguable merit, trial counsel may file a motion to withdraw and supporting brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 ¿.Ed.2d 493 (1967), which shall be served upon the appellant and the United States. The United States shall file a brief in response. Appellant may also file a brief in response pro se. After all briefs have been filed, the clerk will refer the case to a merits panel. If the panel agrees that the appeal is without merit, it will grant trial counsel’s Anders motion, and dispose of the appeal without appointing new counsel. If the panel finds arguable merit to the appeal, it will discharge current counsel, appoint substitute counsel, restore the case to the calendar, and order supplemental briefing.
In assessing an Anders brief, we must determine: “(1) whether counsel adequately fulfilled the rule’s requirements; and (2) whether an independent review of the record presents any non-frivolous issues.” United States v. Youla, 241 F.3d 296, 300 (3d Cir.2001) (explaining L.A.R. 109.2(a)) (citations omitted).
We first examine whether counsel fulfilled the requirements of Rule 109.2(a) and then turn to the issue of our independent review. As Rule 109.2(a) reflects, “[t]he duties of counsel when preparing an Anders brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous.” Youla, 241 F.3d at 300. Counsel’s Anders brief satisfies both of these requirements. “Counsel need not raise and reject every possible claim” but need only satisfy the “conscientious examination” standard set forth in Anders. Id. We are satisfied that *769 counsel has met this standard. Counsel diligently searched the record for any potentially appealable issues and, in fourteen pages of careful analysis, supported his claims of frivolousness with citations to relevant ease law. Gf id. (holding that counsel did not adequately explain the frivolity of appealable claims where “counsel’s analysis of the merits of the potential appealable issues constituted two pages” and cited “no case law”).[4]
Thus, the Anders inquiry proceeds to our independent review of the record. When an Anders brief appears adequate on its face, our own examination is to be guided by the Anders brief itself. Id. at 301. Counsel raises four possible issues for review in his Anders brief: (1) the sufficiency of the evidence relied upon by the jury; (2) the District Court’s handling of the jury, who were deadlocked before reaching a verdict; (3) the District Court’s articulation of its consideration of the relevant sentencing factors outlined at 18 U.S.C. § 3553(a); and (4) the District Court’s calculation of the proper guidelines sentence, specifically the District Court’s application of the role-as-leader and unauthorized-use-of-means-of-identification enhancements. On the basis of our review, we agree that all of these issues are without merit.
Counsel invites us to consider whether his “criteria for frivolousness [are] too strict” as to two issues: (1) whether the jury had sufficient evidence to support the wire fraud conviction, and (2) whether the court properly applied the sentencing enhancement for means of identification. See Appellant’s Br. at n. 24; note 3, supra. We will briefly address each of these issues.
First, Counsel suggests that a sufficiency of the evidence claim might ground a non-frivolous appeal because a jury convicted Craig of wire fraud despite the fact that it deadlocked on the charge of mail fraud. Because mail fraud and wire fraud are crimes with different elements, however, deadlock as to one has no bearing on the sufficiency of the evidence for the other. An appellate court’s determination of whether a jury’s verdict was supported by sufficient evidence “should be independent of the jury’s determination that evidence on another count was insufficient.” United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). The District Court explained to Craig’s jury that an element of mail fraud is that the defendant “used the mails or caused the mails to be used.” (App.774.) Because the jury had a sufficient amount of evidence to convict on the wire fraud charges — which have nothing to do with mail usage — the jury’s deadlock on the mail fraud counts cannot transform an otherwise frivolous sufficiency of the evidence argument into a non-frivolous one. This is especially true where, as here, the appellate court’s review is for plain error because the defendant did not challenge the sufficiency of the evidence by moving for a motion of acquittal during or after trial.
Counsel also expresses “disquiet” as to whether our decision in United States v. Hawes, 523 F.3d 245 (3d Cir.2008), calls into question the District Court’s application of the means-of-identification enhancement, U.S.S.G. § 2Bl.l(b)(9)(C)(i). Hawes held that a financial adviser who defrauded his clients by changing their addresses (so that he, and not they, could obtain mailings of their financial statements and then mail the clients fabricated financial statements instead) did not qualify for the enhancement because a mailing address, *770 standing alone, is not a “means of identification” as defined by the Guidelines. See Hawes, 523 F.3d at 252.
Section 2Bl.l(b)(9)(C)(i)[5] applies whenever the defendant has committed “the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.” The application note to § 2B1.1 (b)(9) (C) (i) instructs that “ ‘[m]eans of identification’ has the meaning given that term in 18 U.S.C. § 1028(d)(4).” That section (now codified at 18 U.S.C. § 1028(d)(7)) provides:
[T]he term “means of identification” means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—
(A) name, social security number, date of birth, official State or government issued driver’s license or identification number, alien registration number, government passport number, employer or taxpayer identification number;
(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;
(C) unique electronic identification number, address, or routing code; or
(D) telecommunication identifying information or access device (as defined in section 1029(e));
As we noted in Hawes, this statutory definition of “means of identification” contains both general terms (“any name or number that may be used ... to identify a specific individual”) and specific terms (a list of examples of means of identification, which does not include a mailing address). 523 F.3d at 250. Hawes concluded that § 2Bl.l(b)(9)(C)(i) targets “breeding a new means of identification” that involves “unique means of identification, primarily numbers” rather than “merely an attribute of one’s identity.” Id. at 251-52. Thus, it held, mailing addresses — which are not specifically listed or referred to by § 1028(d)(4) — do not fall under the meaning of the guideline.
Both credit card numbers and e-Bay accounts, in contrast, are means of identification specifically identified by § 1028(d)(4), as both constitute “access devices” within the meaning of § 1028(d)(4)(D). Pursuant to § 1028(d)(4)(D), an access device is defined by reference to 18 U.S.C. § 1029(e). That definition of “access device” provides:
the term “access device” means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)[.]
18 U.S.C. § 1029(e)(1) (emphasis added). A credit card falls under the definition of “access device” because it is a “card ... that can be used ... to obtain money, goods, services, or any other thing of value.” An e-Bay account, meanwhile, is a “means of account access that can be used ... in conjunction with another access device”- — -namely a credit card — “to obtain money, goods, services, or any other thing of value.” Credit cards and e-Bay accounts are therefore means of identification for the purposes of applying the sentencing enhancement from *771 § 2Bl.l(b)(9)(C)(i). Accordingly, Craig’s conduct is “easily categorized as the breeding of means of identification,” Hawes, 528 F.3d at 250, because Craig used one means of identification (his grandmother’s credit card) to spawn another (a newly created eBay account in her name).
IV.
For the foregoing reasons, we will grant counsel’s motion to withdraw and affirm the judgment of the District Court.

. "E-bay is a global online marketplace, essentially a newspaper classified ad that brings buyers and sellers together allowing basically anyone on earth to buy and sell basically almost everything.” (App. 131.)

. The PSR used, and the District Court applied, the 2002 edition of the Federal Sentencing Guidelines Manual.

. Counsel for appellant does note, however, that he is conflicted as to whether there is arguable merit with respect to two issues: whether the jury had sufficient evidence to support its wire fraud verdict, and whether the court properly applied the sentencing enhancement for "means of identification.’ See Appellant's Br. at nn. 24 & 35.

. That counsel notes two claims with respect to which he is somewhat conflicted about his own conclusion of frivolity serves to confirm the care he has taken in briefing this appeal. See note 3, supra.

. Hawes, like the instant matter, involved the 2002 edition of the guidelines manual. The means-of-identificalion enhancement is now at § 2Bl.l(b)(10)(C)(i).