OPINION
SLOVITER, Circuit Judge.
Syeed Briggs was convicted by a jury of conspiracy to commit aimed bank robbery (Count 1), two counts of armed bank robbery (Counts 2 and 4), and two counts of aiding and abetting the carrying and use of a firearm during a crime of violence (Counts 3 and 5). After Briggs timely filed a notice of appeal, his appointed appellate counsel filed a motion to withdraw as counsel and a brief in support pursuant to Anders v. California, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
I.
Because we write primarily for the parties, our recitation of the facts is brief. This case arises out of two bank robberies in the fall of 2006. First, on September 28, 2006, Briggs, Alfreddie Postell and two other conspirators planned and executed an armed robbery of the American Heritage Federal Credit Union in King of Prussia, Pennsylvania. (PSR ¶ 11.) Briggs supplied and drove the getaway ear; the conspirators divided the proceeds of the robbery at Briggs’ apartment. (PSR ¶ 11.) Second, on October 16, 2006, Briggs, Postell and two other conspirators planned and executed an armed bank robbery of the Nova Savings Bank in Plymouth Meeting, Pennsylvania. (PSR ¶ 12.) Briggs again provided the getaway car and use of his apartment.
On October 23, 2006, agents from the Federal Bureau of Investigations (“FBI”) interviewed Postell regarding the robbery of the Nova Savings Bank. Postell told the agents that he planned and executed the robbery of the Nova Savings Bank with three others, including Briggs. Aimed with search warrants for Briggs’ residence and ear, the FBI agents knocked on the door of Briggs’ apartment on October 25, 2006. They waited about forty-five seconds before entering the apartment. The agents’ search uncovered about $2,700 in currency and three bank straps consistent with those used by the American Heritage Federal Credit Union. After discovery of the straps, Briggs was told that he was being detained and was read his Miranda rights.
Briggs was thereafter transported to the Plymouth Township Police Department, where he was again advised of his Miranda rights. Briggs signed a waiver form stating that he understood his rights and agreed to speak to the agents, and he then gave a detailed statement to the agents regarding his role in the bank robberies. Briggs also signed a typewritten record of his statement, including a verification that he was not coerced, threatened or promised anything to give the statement.
Thereafter, the agents executed the search warrant of his car and found a money wrapper under the driver’s seat, a *752 green canvas bag consistent with one used during the robberies, and a demand note with the words “$10,000 Right Now; You got 1 min; No Dye; No Cops; No False Movement” written on it. App. at 14. The agents then interviewed Briggs a second time, again reading him his Miranda rights, which Briggs again waived in a signed writing. Briggs admitted that he wrote the demand note and that the bank straps found in his apartment came from the American Heritage Federal Credit Union robbery. After the interview, Briggs again signed a written record of his statement and verified that he was not coerced, threatened, or promised anything in exchange for his statement.
After two of his co-conspirators pled guilty, Briggs was ultimately charged in a Superseding Indictment with conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 (Count 1), two counts of aiding and abetting bank robbery with a dangerous weapon in violation of 18 U.S.C. §§ 2113(d) and 2 (Counts 2 and 4), and two counts of aiding and abetting the use and carrying of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Counts 3 and 5). Briggs moved to suppress the physical evidence found at his apartment and in his car as well as his statements to the FBI agents, but the District Court denied suppression of that evidence after a hearing. The case proceeded to a jury trial, and the jury found Briggs guilty on all counts. The District Court then imposed a below-Guidelines sentence of 384 months and one day imprisonment.[1]
Briggs timely filed a notice of appeal. Appellate counsel was then appointed for Briggs, and counsel subsequently moved to withdraw, and filed a brief in support of that motion, pursuant to Anders. After Briggs filed a pro se brief in opposition to his counsel’s Anders motion, the Government filed a brief supporting counsel’s motion to withdraw and seeking to affirm the conviction and sentence.[2]
II.
“Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to Anders ....” 3d Cir. L.A.R. 109.2 (2008). Accordingly, appellant’s counsel must “satisfy the court that he or she has thoroughly scoured the record in search of appeal-able issues” and then “explain why the issues are frivolous.” United States v. Marvin, 211 F.3d 778, 780 (3d Cir.2000) (citation omitted.). “The Court’s inquiry when counsel submits an Anders brief is thus twofold: (1) whether counsel adequately fulfilled [Third Circuit Local Appellate Rule 109.2’s] requirements; and (2) whether an independent review of the record presents any nonfrivolous issues.” United States v. Youla, 241 F.3d 296, 300 (3d Cir.2001).
*753 Here, Briggs’ counsel has identified several potential non-frivolous issues and has concluded that all lack merit. First, counsel agrees that the District Court correctly rejected Briggs’ suppression motion. Both before the District Court and in his pro se brief to this court, Briggs has raised a number of challenges to the introduction of the physical evidence found in his home and car as well as his statements to the police.
As to the physical evidence, Briggs contends that the search warrants for his home and car were based on affidavits that included false information, that the warrant was not supported by probable cause and failed to state with sufficient particularity the items to be searched and seized, and that the evidence found in his home should be suppressed because the agents violated the knock-and-announce rule when they executed that warrant. These arguments lack merit. The District Court heard testimony regarding the affidavits of probable cause and concluded that Briggs failed to uncover any evidence of misrepresentations. The search warrants were supported by probable cause, particularly Postell’s statement to the investigators. Briggs points us to no evidence to the contrary. Briggs did not raise before the District Court his argument that the search warrants were invalid because they lacked a sufficient description of the items to be searched and seized, and therefore he has waived that argument. See United States v. Rose, 538 F.3d 175, 182 (3d Cir.2008). Briggs also contends that his trial counsel was ineffective for failing to raise this argument before the District Court, but that claim is not cognizable on this record on direct appeal. See United States v. Morena, 547 F.3d 191, 198 (3d Cir.2008). Finally, as to Briggs’ claim that the agents that executed the search warrant of his home violated the knock-and-announce rule, even assuming that they did so, suppression would not be appropriate. See Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).
As to the suppression of his statements to the police, Briggs contends that the FBI agents lacked probable cause to arrest him following execution of the search warrant, that his statements were coerced, and that the police continued questioning him after he invoked his right to counsel. Briggs argues that he was seized without probable cause as soon as the agents entered his home, but the District Court credited the testimony of FBI Agent Kenneth Vincent that he told Briggs that he was free to leave during the execution of the search warrant and noted that Briggs conceded during his testimony at the suppression hearing that he was told at the beginning of the search that he was not under arrest. Briggs points us to nothing to undermine these findings. Moreover, we agree with the District Court that the agents had probable cause to arrest Briggs after the search of his home based on Postell’s earlier statement as well as the bank money straps and significant amount of cash found in Briggs’ home.
The record also demonstrates that Briggs was read his Miranda rights on three separate occasions and that he knowingly and voluntarily waived those rights and agreed to speak to the investigating agents, as evidenced by the two written waiver forms that he signed. Briggs argues that his statements were the result of coercion, but the District Court credited the testimony of one of the FBI agents who interviewed Briggs that the agents interviewing him did not makes any promises or threats to induce his statements. Again, Briggs offers nothing to undermine this finding.
Finally, Briggs contends that he told the investigating agents that he did *754 not want to answer any questions until he found out if his mother obtained counsel for him, but they impermissibly continued to question him after that invocation of his right to counsel. However, the District Court did not credit Briggs’ testimony on this point, instead finding credible FBI Agent Andrew Lash’s testimony that Briggs never asked for an attorney. Moreover, we agree with the District Court that, even assuming that Briggs’ version of the events is accurate, Briggs’ statement was not a sufficiently clear and unambiguous invocation of his right to counsel so as to require the agents to cease questioning. See Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (“[A]fter a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.”).
The remaining issues raised by Briggs (and noted by his appellate counsel) require little discussion. First, Briggs contends that the Government violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by striking all four African-American members of the jury venire panel. However, the Government simply did not strike any African-American members of the panel, whether by peremptory challenge or for cause. There is no such evidence. Second, Briggs contends that the Government failed to prove beyond a reasonable doubt that the American Heritage Federal Credit Union was federally insured, as required for a conviction under 18 U.S.C. § 2113(f) on Count 2. However, the Government introduced records of the National Credit Union Administration showing that the credit union at issue was federally insured at the time of the bank robbery. Finally, we agree with Briggs’ appellate counsel that the sentence imposed by the District Court was reasonable. Indeed, the District Court imposed the mandatory minimum sentences for the weapons offenses and a substantially below-Guidelines sentence of one day on the conspiracy and bank robbery counts in light of the severity of the sentences on the weapons offenses.
III.
For the above-stated reasons, we will grant counsel’s motion to withdraw and affirm the judgment of conviction and sentence.

. Briggs was sentenced to a statutory mandatory minimum of seven years imprisonment on Count 3 pursuant to 18 U.S.C. § 924(c)(l)(A)(ii) and a statutory mandatory minimum of twenty-five years imprisonment on Count 5 pursuant to 18 U.S.C. § 924(c)(l)(C)(i). These sentences must run consecutively pursuant to 18 U.S.C. § 924(c)(l)(D)(ii). Briggs also faced a Guidelines sentencing range of 70 to 87 months for the conspiracy and bank robbery charges. (PSR ¶ 97.) In light of the length of imprisonment on the weapons offenses, the District Court, with the agreement of the Government, sentenced Briggs to one day imprisonment on those charges.

. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.