NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3752

_____

UNITED STATES OF AMERICA

v.

BORIS MALINSKY,
Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 06-CR-00298-1)
District Judge:  Honorable Berle M. Schiller

_____

Submitted Under Third Circuit LAR 34.1(a)
July 15, 2010

_____

Before:  RENDELL, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed: August 19, 2010 )

_____

OPINION

GREENAWAY, JR., Circuit Judge

Boris Malinsky pled guilty to one count of health care fraud under 18 U.S.C. §

1347.  The United States District Court for the Eastern District of Pennsylvania sentenced

him to 57 months' imprisonment. Malinsky appealed to this Court for the purpose of challenging the sentence imposed. Malinsky's counsel ("Counsel") petitions this Court for permission to withdraw from representing Malinsky on appeal, pursuant to Anders v. California, 386 U.S. 738 (1967). For the reasons addressed below, we will grant Counsel's petition and affirm the sentence imposed by the District Court.

## I. BACKGROUND

We write solely for the benefit of the parties and recount only the essential facts.

The health care fraud charge against Malinsky stemmed from Malinsky's involvement, with his partner Shlomo Kaufman, in the operation of the 13050 Medical Center ("Medical Center") in Philadelphia.[1] The facts underlying the indictment alleged that from December 1999 through January 2002 Malinsky and Kaufman caused the Medical Center to submit fraudulent claims for reimbursement to insurance companies. An undercover FBI investigation of the Medical Center in 2000 revealed that ninety-five to ninety-nine percent of the claims submitted for reimbursement by the Medical Center during the investigation were fraudulent.

On March 22, 2005, after waiving his Miranda rights, Malinsky provided a statement to the FBI, which is recounted in the Presentence Investigation Report ("PSR"). In that statement, Malinsky admitted that none of the Medical Center's patients received

---

[1] Kaufman was charged separately with the same offense. Kaufman, like Malinsky, pled guilty.

all of the treatments billed by the Medical Center. He also admitted that approximately fifty percent of the bills submitted for reimbursement by the Medical Center to insurers were "fake."

On June 21, 2006, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Malinsky with one count of health care fraud. On December 19, 2006, Malinsky pled guilty to the charge. There was no plea agreement. In the plea allocution, Malinsky neither waived his right to appeal his sentence, nor stipulated to the amount of overpayment to the Medical Center by the defrauded insurance companies. On February 2, 2007, Senior United States Probation Officer Robert Weinberger submitted the PSR to the District Court. The PSR stated that the fraud perpetuated by Malinsky and Kaufman caused more than thirty insurance companies to overpay approximately $560,000. This amount was based on Malinsky's testimony during his probation interview that about fifty percent of the medical billing during the applicable time period was fraudulent, and the determination by an FBI special agent that $560,000 constituted fifty percent of the Medical Center's billings during the applicable time period.

Thus, the base offense level of six was subject to two enhancements: a fourteen-level enhancement, pursuant to U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2F1.1(b)(1)(H), because the loss exceeded $400,000 but was not more than $1,000,000; and a two-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved more than ten but less than fifty victims. The total offense level was determined

3

to be nineteen.[2]

On September 11, 2007, at Malinsky's sentencing hearing, Malinsky's counsel confirmed with the District Court that he discussed the PSR with Malinsky, and stated that the only matter in dispute was the amount of loss. Counsel relayed to the District Court that Malinsky's own estimate of the overpayment was more than $200,000, but less than $400,000. Based on that estimate, Malinsky argued that the total offense level should be reduced from nineteen to seventeen.[3]

The District Court determined that the total offense level was seventeen, based on its determination that the losses tallied $211,318.28. The District Court then determined that the applicable guidelines range, based on that total offense level and Malinsky's criminal history category of V, was forty-six to fifty-seven months. The District Court also noted, parenthetically, that the guidelines range, based on a total offense level of nineteen, would have been fifty-seven to seventy-one months. The District Court imposed a sentence of fifty-seven months, noting that it imposed the same sentence it would have imposed if the total offense level was nineteen, because it thought that fifty-

---

[2] The offense level of nineteen also accounted for two downward adjustments: a negative two level adjustment for the acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), and a negative one level adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b).

[3] Compare U.S.S.G. § 2B1.1(b)(1)(H) (suggesting an increase of 14 to the offense level where the loss is more than $400,000, but less than $1,000,000), with U.S.S.G. § 2B1.1(b)(1)(G) (suggesting an increase of 12 to the offense level where the loss is more than $200,000, but less than $400,000).

seven months was an appropriate sentence.

On September 14, 2007, Malinsky filed a notice of appeal in this Court. On January 5, 2009, Counsel filed the Anders brief (the "Brief") at issue in this opinion.

## II. JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

"In Anders v. California, 386 U.S. 738 (1967), the Supreme Court explained the general duties of a lawyer representing an indigent criminal defendant on appeal when the lawyer seeks leave to withdraw from continued representation on the grounds that there are no nonfrivolous issues to appeal." United States v. Marvin, 211 F.3d 778, 779 (3d Cir. 2000). Under Anders, counsel seeking to withdraw from representation must "satisfy the court that he or she has thoroughly scoured the record in search of appealable issues," and "explain why the issues are frivolous." Id. at 780. "The Court's inquiry when counsel submits an Anders brief is thus twofold: (1) whether counsel adequately fulfilled [Third Circuit Local Appellate Rule 109.2's] requirements;[4] and (2) whether an

---

[4] Local Appellate Rule 109.2 provides, in pertinent part:

> Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to Anders v. California, 386 U.S. 738

5

independent review of the record presents any nonfrivolous issues." United States v. Youla, 241 F.3d 296, 300 (3d Cir. 2001). Where frivolousness is patent, however, "we will not appoint new counsel even if an Anders brief is insufficient to discharge current counsel's obligations to his or her client and this court." United States v. Coleman, 575 F.3d 316, 321 (3d Cir. 2009) (quotation marks omitted).

## IV. ANALYSIS

The Brief identifies two appealable issues, which Counsel believes to be frivolous: (1) that Malinsky's sentencing was not legal; and (2) that the two-point enhancement, based on more than ten but less than fifty victims, was improper. Malinsky filed, *pro se*, an informal brief in which he states his belief that there are four appealable issues in this case: (1) whether the Government improperly withheld evidence favorable to Malinsky, in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) whether any of the amount of loss taken into account by the District Court in calculating Malinsky's total offense level under U.S.S.G. § 2B1.1(b)(1)(G) occurred outside of the time frame of the offense of which he is convicted; (3) whether Malinsky's total offense level was incorrectly enhanced under U.S.S.G. § 2B1.1(b)(2)(A); and (4) whether Malinsky's total offense level was incorrectly calculated under U.S.S.G. § 2B1.1(b)(1)(G). The Government filed

(1967), which must be served upon the appellant and the United States. The United States must file a brief in response. Appellant may also file a brief in response *pro se*. . . . If [the court] finds arguable merit to the appeal, or that the Anders brief is inadequate to assist the court in its review, it will appoint substitute counsel, order supplemental briefing and restore the case to the calendar.

a brief concurring with Counsel's conclusion that Malinsky's appeal is wholly frivolous.[5]

We find that the Brief is insufficient to satisfy Anders's requirements. However, because the frivolousness of Malinsky's appeal is patent, we will discharge Counsel's obligations to Malinsky and this Court. Coleman, 575 F.3d at 321.

The Brief contains only two pages of legal argument. Those two pages do not cite to any legal authority, other than the Sentencing Guidelines, in support of Counsel's arguments. This scant effort does not satisfy this Court that Counsel has "explain[ed] why the issues are frivolous." Marvin, 211 F.3d at 780. The requirements imposed on Counsel seeking to withdraw from representation under Anders are "grounded in the Constitutional requirement of substantial equality and fair process, which the [Supreme] Court notes 'can only be attained where counsel acts in the role of an active advocate in behalf of his client.'" Youla, 241 F.3d at 299 (quoting Anders, 386 U.S. at 744). Counsel's brief argument, supported by the almost complete absence of any authority, hardly represents the "conscientious examination" required by Anders. Marvin, 211 F.3d at 780; see also Youla, 241 F.3d at 300 (finding counsel's two-page analysis of the merits of the potential appealable issues, which cited no case law, insufficient).

The inadequacy of the Brief is made more profound by its failure to "satisfy the court that [Counsel] scoured the record in search of appealable issues." Id. The

---

[5] Malinsky also filed a supplemental brief to which the Government, but not Counsel, filed a response.

statement of appealable issues in the Brief is arguably broad enough to encompass all of Malinsky's stated grounds for appeal, but the Brief does not "assure us that [Counsel] has considered them and found" all of the issues raised by Malinsky to be "patently without merit." Id. at 781; see also Youla, 241 F.3d at 300-01 (contrasting the defendant's twenty-six page *pro se* brief, which presented three issues for appeal, with counsel's two-page discussion of fewer appealable issues). For instance, the Brief does not respond to the new information presented to this Court by Malinsky in his supplemental brief, regarding a civil complaint against Malinsky by one of the defrauded insurers, which Malinsky argues supports his argument that the District Court erred in its determination of the losses caused by his fraud.

The presentation of "what amounts to a no-merit letter devoid of analysis will not suffice" to fulfill counsel's obligations under Anders. Youla, 241 F.3d at 299 (citing Anders, 386 U.S. at 745). The Brief is, essentially, just such a "no-merit" letter.

Even though we hold that the Brief is insufficient to discharge Counsel's obligations to Malinsky and to this Court, we will not appoint new counsel where, as here, the frivolousness of the appeal is patent. Marvin, 211 F.3d at 781. Regarding the calculation of the enhancement to Malinsky's sentence based on the losses suffered by the defrauded insurers, the District Court substantially adopted Malinsky's own estimate of the losses suffered by the defrauded insurance companies. Malinsky argued that the losses were about $200,000, rather than, as specified in the PSR, more than $400,000.

The District Court determined that the losses were $211,318.28, and, based on that determination, reduced the total offense level by two points from that recommended in the PSR. This renders moot Malinsky's first, second, and fourth grounds of review stated in Malinsky's brief.

The District Court's decision to base the losses on Malinsky's proposed amount also undermines Malinsky's argument that the Government violated Brady. Under Brady, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1967). Malinsky alleges that the Government improperly withheld a copy of its correspondence with the defrauded insurance companies. The correspondence, however, stated losses of only $211,318.28—essentially the same amount as the $200,000 in losses Malinsky argued should be considered.

Additionally, while Malinsky claims that he had no way to determine how much of the $211,318.28 claimed by those four companies was related to fraud, as opposed to services actually rendered, Malinsky did not challenge the PSR's finding that he admitted to the FBI that he received approximately $250,000 as a result of the fraudulent billing scheme. Failure to object to a fact in the PSR is an admission of that fact. United States v. Siegel, 477 F.3d 87, 93 (3d Cir. 2007).

Malinsky's other stated ground for appeal—that the total offense level was

9

wrongly enhanced based on the District Court's finding that it was a crime involving more than ten but fewer than fifty victims—is also frivolous.  He failure to object to the PSR's finding that thirty insurance companies were defrauded is an admission of that fact. Id.

## IV.  CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court and grant Counsel's motion to withdraw from the representation of Malinsky.