NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4148
_____

UNITED STATES OF AMERICA

v.

ALLEN ARCHIE HURLEY,
                              Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 11-cr-360)
District Judge:  Hon. Robert D. Mariani
_____

Submitted Under Third Circuit LAR 34.1(a)
October 29, 2013

Before:  FISHER, JORDAN and SLOVITER, *Circuit Judges.*

(Filed: October 31, 2013)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Allen A. Hurley appeals his convictions for voluntary manslaughter, under 18

U.S.C. § 1112, and knowing possession of a prohibited object in prison, under 18 U.S.C.

§ 1791(a)(2), as well as the sentence imposed by the United States District Court for the

Middle District of Pennsylvania.  His attorney moves to withdraw as counsel, pursuant to

*Anders v. California*, 386 U.S. 738 (1967). Because there are no non-frivolous issues for appeal, we will grant the motion to withdraw and will affirm Hurley's conviction and sentence.

## I.    Background

Hurley was charged in a two-count indictment for murdering a fellow inmate, in violation of 18 U.S.C. §§ 7(3) and 1111 (Count I), and for knowing possession of a prohibited object, in violation of 18 U.S.C. § 1791(a) (Count II). Hurley had been convicted of felonies on two prior occasions. In 1992, he was convicted of bank robbery and use of a firearm during a crime of violence, and was sentenced to 111 months' imprisonment. Not long after his release from serving that sentence, he was convicted of conspiracy to commit bank robbery, carrying a firearm during a crime of violence, possession of a firearm by a convicted felon, possession and disposal of a stolen motor vehicle, and witness tampering. At the time of the crimes at issue here, Hurley was serving a 448-month prison term for that second set of felonies.

The indictment in this case followed Hurley's killing of Joseph O'Kane, a fellow inmate at the United States Penitentiary ("USP") Canaan. Hurley pled not guilty, and a four-day jury trial was held. He testified that he and O'Kane scuffled inside his cell, and he admitted to stabbing O'Kane once, though he claimed it was in self-defense. Hurley said that he then blacked out and woke up in a pool of O'Kane's blood. The autopsy of O'Kane revealed 92 stab wounds, blunt force trauma, and penetrating trauma to the brain. In a letter to his uncle after the incident, Hurley wrote, "I am in an environment where I was forced to kill somebody because he wouldn't leave me alone." (App. at 613.) He

2

also relied on the testimony of other inmates, who portrayed O'Kane and Hurley's relationship as both friendly and contentious, and described O'Kane as a bully. The jury found Hurley not guilty of second-degree murder, but guilty of the lesser-included offense of voluntary manslaughter. The jury also found Hurley guilty of knowing possession of a prohibited object in prison, namely, the "shank" with which Hurley killed O'Kane.

Soon after that verdict, Hurley filed a motion for a new trial, asserting that the evidence was insufficient to support the conviction for voluntary manslaughter, and that the District Court lacked subject matter and personal jurisdiction. The District Court denied the motion, and preparations for sentencing went forward. A Presentence Investigation Report ("PSR") was prepared, listing Hurley's offense level as 37 and his Criminal History Category as VI, which yielded a Guidelines range of 360 months' to life imprisonment. The PSR also stated that, under 18 U.S.C. § 3559(c), a life sentence was mandated on Count I, to run consecutively with his existing 448-month term of imprisonment. Hurley raised no objections to the PSR. The District Court, after considering the Guidelines and the factors set forth in 18 U.S.C. § 3553(a), sentenced Hurley to life imprisonment and required him to pay $12,203 in restitution on Count I, and sentenced him to five years' imprisonment on Count II.

This timely appeal followed, and, soon after, Hurley's counsel filed a Motion for Leave to Withdraw.

## II.    Discussion[1]

Under *Anders v. California*, appellate counsel may seek withdrawal after conducting a full and conscientious examination of all the proceedings and determining that there is no non-frivolous basis for appeal.  386 U.S. 738, 744 (1967).  Counsel must accompany such a request with a brief identifying any issues that might support an appeal.  *Id.*

We apply a two-step process when *Anders* is invoked: first, we determine whether counsel has "adequately fulfilled" the requirements of Local Appellate Rule 109.2(a),[2]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.  We exercise plenary review over questions of subject matter jurisdiction.  *United States v. Best*, 304 F.3d 308, 311 (3d Cir. 2002).  We review issues that were not preserved for plain error.  *United States v. Vampire Nation*, 451 F.3d 189, 203 (3d Cir. 2006).  We review the sentence imposed by a district court for procedural and substantive reasonableness and only reverse a sentence if its imposition constituted an abuse of discretion.  *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010).

[2] We implement *Anders* through our Local Appellate Rule 109.2(a), which provides:

> Where, upon review of the district court record, counsel is persuaded that the appeal presents no issue of even arguable merit, counsel may file a motion to withdraw and supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1976), which must be served upon the appellant and the United States.  The United States must file a brief in response.  Appellant may also file a brief in response pro se. … If the panel agrees that the appeal is without merit, it will grant counsel's *Anders* motion, and dispose of the appeal without appointing new counsel.

3d Cir. L.A.R. 109.2(a) (2011).

4

and, second, we conduct an independent review of the record to see if there are any non-frivolous issues. *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001).

When deciding whether counsel has "adequately fulfilled" the requirements of Rule 109.2(a), we look at the adequacy of counsel's supporting brief. To be adequate, the brief must satisfy us that counsel has thoroughly examined the record in search of appealable issues and has explained why any potential issues are frivolous. *Id.* "Counsel need not raise and reject every possible claim," but must still carefully examine the record. *Id.* If the *Anders* brief is adequate, our review is limited to those issues implicated by the brief. *Id.* at 301. When the *Anders* brief is inadequate, we may expand our review to portions of the record implicated in the defendant's pro se brief or other filings that provide "guidance concerning the issues [the defendant] wishes to raise on appeal." *Id.* Regardless of the adequacy of the brief, we may affirm the conviction and sentence without appointing new counsel if we find, after reviewing the record, that the "frivolousness [of the appeal] is patent." *United States v. Coleman*, 575 F.3d 316, 321 (3d Cir. 2009) (internal quotations marks omitted).

Counsel's *Anders* brief provides a thorough examination of the record and adequately explains that all appealable issues are frivolous. We are satisfied that it complies with *Anders* and confine our review to the issues contained therein, which focus on the jurisdiction of the District Court, the Court's rulings during trial, the sufficiency of the evidence to sustain Hurley's conviction, and the Court's sentence.[3]

---

[3] Hurley did not provide a brief in support of his appeal.

A.    *The District Court's Jurisdiction Over Hurley's Prosecution*

Counsel's brief first addresses Hurley's assertion that the District Court lacked personal and subject matter jurisdiction.  As it notes, "Hurley's argument would be that the District Court lacked jurisdiction because the Government never properly proved the necessary element in either 18 U.S.C. §§ 1111(b) and 1112(b), that Hurley's conduct occurred '[w]ithin the special maritime and territorial jurisdiction of the United States … .'"  (Appellant's Opening Br. at 42-43.)  That argument addresses an aspect of the criminal activity and does not bear on the District Court's constitutional or statutory power to adjudicate the case.  *United States v. Williams*, 299 F.3d 250, 253 n.3 (3d Cir. 2002) (citing *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001)).  As noted earlier, Hurley was indicted for second-degree murder of a fellow prison inmate, in violation of 18 U.S.C. §§ 7(3) and 1111, and knowing possession of a prohibited object, in violation of 18 U.S.C. § 1791(a)(2).  Federal district courts have subject matter jurisdiction over all violations of federal law, 18 U.S.C. § 3231, and there is no question that the government can regulate criminal behavior in a federal prison.  In addition, a federal court obtains personal jurisdiction over an indicted defendant once the defendant is brought before the court.  *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003).  Therefore, because Hurley was indicted on federal criminal charges and brought before the Court that tried him, the District Court had both subject matter and personal jurisdiction.  To the extent he argues that there was insufficient proof of the jurisdictional element of the

6

offenses, that argument was not raised in the District Court,[4] and is, in any event, patently frivolous.

B.    *The Trial Proceedings*

The *Anders* brief submitted by Hurley's counsel points out that there is nothing in the record to indicate that the District Court committed legal error during the trial. During the pretrial phase, there were no objections or adverse rulings, with the exception of a discovery dispute involving autopsy photographs, and that was eventually resolved by the parties. Hurley's counsel also examined the trial proceedings and noted that no arguments for legal error were preserved. In that regard, for us to reverse the District Court when reviewing issues of legal error raised for the first time on appeal, we must conclude that the Court committed plain error "that affected [Hurley's] substantial rights." *United States v. Vampire Nation*, 451 F.3d 189, 203 (3d Cir. 2006). The record is devoid of support for any such conclusion.

C.    *The Sufficiency of the Evidence to Sustain Hurley's Conviction*

In the motion for a new trial that he filed in the District Court, Hurley did not contest the jury's verdict on possession of a prohibited object in prison; therefore, we direct our attention to the conviction for voluntary manslaughter.[5] When examining a jury's guilty verdict based on a sufficiency of evidence argument, we review the evidence at trial in the light most favorable to the Government and must sustain the verdict if "any

---

[4] Before the District Court, Hurley's argument for lack of jurisdiction was, in its entirety, that he "ha[d] not consented to jurisdiction and is not a member of the military subject to the Court's jurisdiction." (App. at 931.)

[5] Under a review for plain error, there is no basis to vacate the jury's verdict on Hurley's possession of a prohibited object in prison.

rational trier of fact could have found the essential elements of the offense … beyond a reasonable doubt." *United States v. Anderson*, 108 F.3d 478, 480 (3d Cir. 1997) (internal quotation marks omitted).

Voluntary manslaughter "is the unlawful killing of a human being without malice … [u]pon a sudden quarrel or heat of passion … ." 18 U.S.C. § 1112(a). The record is sufficient to sustain the conviction. Hurley testified that he and O'Kane engaged in a physical altercation, and he stabbed O'Kane once before blacking out and waking up in a pool of O'Kane's blood. In a letter from Hurley to his uncle, he wrote he was forced to kill somebody. There was testimony from other inmates that O'Kane had a reputation for being a bully and committed acts of violence against Hurley. There is also evidence that Hurley and O'Kane had an altercation just two hours before Hurley killed O'Kane. Hurley also testified that O'Kane insulted Hurley immediately before the confrontation began, and that Hurley feared that O'Kane wanted him dead. Evidence from the autopsy revealed O'Kane was stabbed 92 times – with some of the injuries "undoubtedly" occurring after he was incapacitated. (App. at 483.) The record, when reviewed in the light most favorable to the government, confirms that a rational trier of fact could certainly have found Hurley guilty of voluntary manslaughter beyond a reasonable doubt.

D.    *Hurley's Sentence*

Finally, the *Anders* brief addresses the reasonableness of the sentence. The District Court followed the three-step sentencing protocol set forth in *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006). The first step is to calculate the appropriate Guidelines offense level and criminal history category. *Id.* at 247. Second, the court

8

must rule on all motions for departure. *Id.* At the last step, the district court determines the appropriate sentence by considering the relevant factors set forth in 18 U.S.C. § 3553(a). *Id.*

A conviction for a third violent felony (and it is undisputed that Hurley had two prior convictions for violent felonies) mandates a sentence of life imprisonment, 18 U.S.C. § 3559(c), and a conviction for possession of contraband that "is designed or intended to be used as a weapon" carries a punishment of imprisonment of not more than five years, *id.* § 1791(b)(3), (d)(1)(B).[6] The Guidelines provide that a "sentence may be imposed at any point within the applicable guideline range, provided that the sentence … is not less than the statutorily required minimum sentence." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5G1.1(c)(2). Furthermore, if the offense for which the defendant is being sentenced was committed while the defendant was imprisoned, then "the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(a).

We see no error, either procedural or substantive, in the sentence imposed here.

## III. Conclusion

For the foregoing reasons, we will grant Hurley's counsel's motion to withdraw, affirm Hurley's conviction, and affirm the sentence imposed by the District Court.

---

[6] The Guidelines range for Count II alone was 33-41 months, based on an offense level of 13 and Hurley's criminal history category VI.