**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2350
_____

UNITED STATES OF AMERICA

v.

MIGUEL JUNIOR MORRIS, a/k/a Tony


MIGUEL JUNIOR MORRIS,
Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1:12-cr-00105-001)
District Judge: Honorable William W. Caldwell
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 25, 2014

Before: FUENTES, GREENBERG, and VAN ANTWERPEN, *Circuit Judges*

(Filed: March 26, 2014)
_____

OPINION OF THE COURT
_____

VAN ANTWERPEN, *Circuit Judge*.

This case is governed by *Anders v. California*, 386 U.S. 738 (1967). The matter

arises out of the District Court for the Middle District of Pennsylvania's conviction of

Miguel Junior Morris ("Morris") for possessing with intent to distribute 5 kilograms or

more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i) and subsequent sentence of 264 months imprisonment. For the reasons that follow we will grant counsel's request to withdraw and affirm the judgment and sentence of the District Court.

## I.    BACKGROUND

On April 25, 2012, Morris was indicted by a Grand Jury sitting in the Middle District of Pennsylvania. The one count indictment charged that "[o]n or between 2005 and April 15, 2011, within the Middle District of Pennsylvania [Morris] knowingly and intentionally possessed with intent to distribute 5 kilograms or more of . . . cocaine." (Appendix ("App.") at 15.) Morris pled not guilty, but waived a jury trial.

Prior to trial, Morris moved to suppress evidence found during a residential search, pursuant to a warrant. The evidence included cocaine, currency, and drug paraphernalia. Morris argued that the search warrant was based upon false and incomplete information. Specifically, Morris claimed that Detective Anthony Lombardo did not base his statement of probable cause on information provided by a "citizen in good standing," and that the controlled buys that Detective Lombardo testified to having witnessed did not occur or did not occur as stated. After a hearing, the District Court explicitly denied the motion on credibility grounds, finding "the testimony of Detective Anthony Lombardo to be credible and the testimony of [Morris] not to be credible." (App. at 85.)

On October 25, 2012, Morris wrote to the District Court claiming that his appointed counsel, William A. Fetterhoff ("Fetterhoff"), was ineffective and requested substitute counsel. Morris complained that Fetterhoff's motions for continuances violated his right to a speedy trial. On November 15, 2012, Morris wrote again, complaining

2

generally that Fetterhoff was not diligent or trustworthy. Rather than request substitute counsel, Morris now expressed a desire to proceed *pro se* at trial; however, he accused the District Court of coercing this decision by failing to appoint substitute counsel.

On November 20, 2012, the District Court issued an Order scheduling a hearing to determine "whether new counsel should be appointed, and/or whether the defendant is serious about going to trial pro se and understands the implications of such a decision." (Order at 1, Nov. 20, 2012, ECF No. 44.). The hearing occurred on November 28, 2012, six days prior to the December 4, 2012 trial. As discussed below, the District Court was initially reluctant to discuss Morris' reasons for wanting substitute counsel beyond what he expressed in his letters. However, it ultimately heard Morris' reasons and rejected his request. It then conducted a colloquy on Morris' *pro se* request and found Morris' waiver knowing, voluntary, and intelligent. Although the District Court rejected Morris' request for substitute counsel, due to his apparent reservations over proceeding *pro se*, it appointed Fetterhoff as standby counsel. Despite Fetterhoff's readiness to represent him, Morris only permitted him to conduct three cross-examinations.

During the trial, the Government presented testimony of nine witnesses, including the investigating officers and persons claiming to have purchased cocaine from and sold cocaine for Morris. Morris chose not to testify. He presented no witnesses, but successfully moved to have documents admitted.[1] The District Court found Morris guilty of possessing with intent to distribute cocaine in excess of 5 kilograms.

---

[1] Morris' counsel indicates that he has been unable to locate these documents despite contacting the District Court, the Government, Morris' standby trial counsel, and Morris.

Morris' Presentence Investigation Report ("PSR") calculated his Total Offense Level as 37 (which included designation as a career offender) and Criminal History Category as VI, resulting in a Guidelines range of 360 months to life. *See* United States Sentencing Guidelines ch. 5, pt. A. Morris objected to the PSR on two grounds: (1) lack of sufficient evidence to show the drug weight of 10 kilograms of cocaine, and (2) an unexplained denial that he was a career offender.

At sentencing, Morris did not raise any further objections to the PSR. His counsel then argued for a downward variance, raising three factors for the District Court's consideration: (1) although the prior convictions were technically within the 15 year period required for career offender status, they had a sentencing date 20 years prior to this sentencing; (2) no firearms were involved in this or any other of Morris' conviction; and (3) given the mandatory minimum, Morris, then 43 years of age, would be at least 60 when released, an age when recidivism is statistically unlikely.

The District Court imposed a sentence of 264 months, 24 months above the 20 year statutory minimum. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(i). The sentence reflected a 96 month downward variance from the lower end of the Guidelines range. Judge Caldwell explained that while the 1993 convictions "were serious," he would take into account that they occurred 20 years ago. (App. at 551.) He also considered Morris' age and the lack of firearms or crimes of violence. He concluded, "I do feel therefore that the guideline sentence is too severe for the offenses that you have committed, and I'm sorry that you have to be sentenced as a career offender, but I don't control that at all." (*Id.*)

After sentencing, Fetterhoff filed a motion to withdraw, which the District Court granted. It appointed substitute counsel for Morris' appeal. Morris appealed, but his appointed counsel seeks to withdraw pursuant to Local Appellate Rule (L.A.R.) 109.2 and *Anders v. California*, 386 U.S. 738 (1967). The Government filed a brief in support of appellate counsel's brief and Morris filed a *pro se* brief in support of his appeal.

## II.    DISCUSSION[2]

Under *Anders*, if appellate counsel "finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. Counsel's request must include "a brief referring to anything in the record that might arguably support the appeal." *Id.* To meet the requirements of *Anders* and L.A.R. 109.2(a), counsel must "satisfy the court that he or she has thoroughly scoured the record in search of appealable issues and then explain why the issues are frivolous." *United States v. Coleman*, 575 F.3d 316, 319 (3d Cir. 2009) (quoting *United States v. Marvin*, 211 F.3d 778, 780 (3d Cir. 2000)) (internal quotation marks omitted). An appeal is frivolous if it "lacks any basis in law or fact." *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 438 n.10 (1988). Counsel need not "raise and reject every possible claim." *United States v. Youla*, 241 F.3d 296, 300 (3d Cir. 2001). At minimum, however, counsel must satisfy *Anders'* "conscientious examination" standard. *Id.* (quoting *Anders*, 386 U.S. at 744).

---

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231 because Morris was charged with an offense against the United States. We have jurisdiction pursuant to 28 U.S.C. § 1291.

5

In evaluating an *Anders* brief, the Court makes a two-fold inquiry: "(1) whether counsel adequately fulfilled [L.A.R. 109.2(a)'s] requirements; and (2) whether an independent review of the record presents any nonfrivolous issues." *Id.* If the brief is adequate, the Court will confine its review to those portions of the record counsel has identified, as well as those identified in the defendant's *pro se* brief (if filed). *Id.* at 301. In the event we agree that there are no nonfrivolous grounds for appeal, we grant counsel's motion and dismiss or affirm. *Anders*, 386 U.S. at 744.

### A. Adequacy of Counsel's *Anders* Brief

Counsel has identified and rejected as frivolous four specific issues: (1) the jurisdiction of the District Court; (2) the District Court's denial of Morris' Suppression Motion; (3) the sufficiency of the evidence; and (4) the reasonableness of the sentence. Counsel also notes that the District Court did not rule against Morris on any matters pretrial, during trial, or post-trial (except the Suppression Motion), and that a review of the record reveals no appealable issues that were not raised in the District Court. Counsel has reviewed the relevant law, explained why the appeal is frivolous, and appended relevant portions of the record. We find that counsel's "conscientious examination" satisfies *Anders* and L.A.R. 109.2(a).

As discussed below, Morris' *pro se* brief raises issues counsel does not address. We have previously noted that counsel's failure to address issues raised in *pro se* filings is evidence of an inadequate *Anders* brief. *See, e.g.*, *Youla*, 241 F.3d at 301. However, counsel need not "raise and reject every possible claim." *Id.* at 300. While we have reservations about the District Court's procedures—and thus highlight them with an

6

extended discussion—we ultimately conclude that Morris raises no nonfrivolous issues. Although we would have preferred counsel to address this issue, his effort assures us that he has "thoroughly searched the record and the law." *Marvin*, 211 F.3d at 781. We next proceed to our independent review of the issues raised in counsel's *Anders* brief.

### B. Independent Review

#### 1. The District Court's Jurisdiction

The District Court had subject matter jurisdiction because Morris was charged with an "offense[] against the laws of the United States." 18 U.S.C. § 3231. It had personal jurisdiction because Morris was brought before the District Court on a federal indictment charging a violation of federal law. *See United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003). No nonfrivolous challenge exists.

#### 2. The Suppression Motion

No nonfrivolous grounds exist to challenge the District Court's denial of Morris' suppression motion. Morris argued that the search warrant was based upon false and incomplete information. The District Court denied his motion, specifically holding Detective Lombardo's testimony to be credible and Morris' testimony not to be credible.

As to the facts, we generally review denial of a suppression motion for clear error. *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006). However, credibility determinations are reserved for the factfinder. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 n.2 (3d Cir. 1999). "[W]e will not review a district court's credibility determination." *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995) (citing *Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir. 1974)).

7

### 3. The Sufficiency of the Evidence

No nonfrivolous arguments exist to challenge the sufficiency of the evidence upon which Morris was convicted. Appellate courts review trial evidence for sufficiency "in the light most favorable to the Government." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). Morris' burden is heavy "for [the court] must uphold his conviction if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Id.* The essential elements of Morris' offense are (1) knowing possession of a controlled substance, and (2) intent to distribute it. 21 U.S.C. § 841(a)(1).

### a. Knowing Possession of a Controlled Substance

Testimony elicited at trial was sufficient for a rational trier of fact to find this element established beyond a reasonable doubt. Prosecution witness John Hutchinson testified that he purchased crack cocaine from Morris and later began cooking it for him. He and Morris traveled together approximately twenty times to pick up cocaine, and Morris received approximately one kilogram of cocaine per month between 2005 and 2008. He estimated that he personally cooked between 10 and 20 kilograms of cocaine for Morris and that Morris stored the drugs in his apartment.[3]

Ramonita Mestre-Nunez, Morris' ex-girlfriend, with whom Morris lived for a year, observed Morris possessing cocaine and testified that he would travel every weekend and return with cocaine every other weekend. This was corroborated by Rent-

---

[3] Portions of this testimony, including that Morris "sold to a lot of people," were corroborated by Brent Hoffmaster, who also traveled with Morris to pick up cocaine.

A-Car bank records and a Rent-A-Car employee who testified to renting cars to Morris nearly every weekend between June 2007 and August 2008.

Finally, Officer William Watt testified that he watched the window of Morris' apartment when the search warrant was executed. He observed Morris open the window and toss a glass bowl out. A cake-like substance, which Watt believed to be crack, fell from the bowl when it hit the ground. Detective Lombardo, who entered the apartment during the search testified to finding cocaine, Morris' wallet, identification, and mail and documents indicating that he resided at the apartment.

No nonfrivolous challenge exists. The evidence of Morris' knowing possession was adequate to justify a rationale trier of fact in finding this essential element established beyond a reasonable doubt. *See Gibbs*, 190 F.3d at 197.

### b. Intent to Distribute

Testimony elicited at trial was also sufficient for a rational trier of fact to find beyond a reasonable doubt that Morris intended to distribute cocaine. The Government presented witnesses who both sold cocaine for and purchased cocaine from Morris. Mestre-Nunez testified that she sold up to $900 worth of cocaine for Morris on weekends while he was out of town. She testified that Morris would sell cocaine during the week. Witnesses Michael Shaub and Lyle Doyle testified to purchasing cocaine from Morris.

Detective Lombardo testified to finding sandwich baggies, ammonia (used to manufacture crack), razors with suspected cocaine residue on them, and $6,000 in cash. The Government's expert witness, Drug Enforcement Agency Special Agent Mark O'Donnell, testified that the facts of Morris' case supported the inference that Morris

9

possessed cocaine with the intent to distribute it. No nonfrivolous challenge to the sufficiency of the evidence exists.

### 4. Reasonableness of the Sentence

We review imposition of a criminal sentence for abuse of discretion and conduct a two-step inquiry. *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011). We initially determine whether the District Court committed procedural error; if such error exists, we remand without further analysis. *Id.* If we find no procedural error, we review for substantive reasonableness and affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.*

A district court must follow a three step sentencing process. It should (1) calculate the Guidelines range, including sentencing enhancements; (2) consider any motions for departure; and (3) consider the Guidelines range in conjunction with the sentencing factors listed in 18 U.S.C. § 3553(a) to determine the appropriate sentence. *Id.*

The District Court correctly found that Morris' Total Offense Level of 37 and Criminal History Category of VI subjected him to a Guidelines range of 360 months to life imprisonment. It also noted that he was subject to a mandatory 20 year minimum. Morris did not object to the PSR on procedural grounds.[4] Neither party requested a departure. The record demonstrates that the District Court sufficiently considered all of

_____

[4] As noted, Morris did initially raise two non-procedural objections to the PSR: (1) that there was insufficient evidence to support the drug weight of 10 kilograms of cocaine, and (2) that he was not a career offender. As discussed, the unrefuted trial testimony demonstrated Morris was selling at least 10 kilograms of cocaine, and his career offender status was well established by his prior convictions.

10

the relevant § 3553(a) factors and sentencing grounds raised by the parties—including those raised by Fetterhoff in support of Morris' request for a variance. Judge Caldwell explained that while the 1993 convictions "were serious," he would take into account that they occurred 20 years ago. (App. at 551.) He also considered Morris' age and the lack of firearms or crimes of violence. He concluded, "I do feel therefore that the guideline sentence is too severe for the offenses that you have committed, and I'm sorry that you have to be sentenced as a career offender, but I don't control that at all." (*Id.*)

The District Court considered all of the relevant factors and sentenced Morris to 96 months below the properly calculated applicable Guidelines range. We cannot say that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Wright*, 642 F.3d at 152. No meritorious challenge exists on appeal.

### 5. *Morris'* Pro Se *Brief*

Our inquiry under *Anders* requires us to review those issues identified in Morris' *pro se* brief. See *Youla*, 241 F.3d at 301. Morris raises two issues in addition to those highlighted in counsel's *Anders* brief.[5] Our independent review indicates that none of the issues raised by Morris could support a meritorious appeal.

### a) Sufficiency of the Indictment

Morris admits that his challenge to the sufficiency of the indictment was not raised before the District Court. We have held that defendants may challenge the sufficiency of

---

[5] Many of the issues raised by Morris, such as the sufficiency of the evidence and purported errors during the Suppression Hearing, were raised in counsel's brief and are discussed above. We limit the foregoing discussion to those issues not raised by counsel.

indictments for the first time on appeal pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). *United States v. Al Hedaithy*, 392 F.3d 580, 589 (3d Cir. 2004). However, tardy challenges to indictments "are liberally constructed in favor of validity." *United States v. Vitillo*, 490 F.3d 314, 324 (3d Cir. 2007) (quoting *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)). An indictment will be upheld "unless it is so defective that it does not, by any reasonable construction, charge an offense." *Id.* (quoting *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995)).

Morris argues that the indictment was duplicitous because the language "on or between 2005 and April 15, 2011" is so open-ended that Count I "really contains two separate, distinct substantive offenses in the same count." (*Pro Se* Br. at 3–4.) Morris believes that only the actual drugs he was caught with during the search should be counted toward his 21 U.S.C. § 841(a) violation, and that any other evidence supporting a charge of possession with intent to distribute should be charged separately. However, an indictment is not duplicitous merely because it alleges a continuing offense. *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013); *United States v. Cohen*, 444 F. Supp. 1314, 1320 (E.D. Pa. 1978). "[P]ossession with intent to distribute controlled substances is a continuing offense." *United States v. Zidell*, 323 F.3d 412, 422 (6th Cir. 2003) (quoting *United States v. Medina*, 992 F.2d 573, 587 (6th Cir. 1993)) (collecting cases).[6]

> b) *Failure to Appoint New Counsel/Involuntary Waiver of Counsel*

---

[6] Morris' allegations that the erroneous indictment resulted in unfair Grand Jury proceedings and noncompliance with the 5 year statute of limitations provided in 18 U.S.C. § 3282(a) are rejected on the same grounds.

Morris also avers that his Sixth Amendment right to counsel was violated because his request to represent himself *pro se* was unknowing and involuntary. Specifically, he argues that the District Court never conducted a searching inquiry into his "irreconcilable conflict" with Fetterhoff, and that its failure to appoint substitute counsel coerced him into proceeding *pro se*. (*Pro Se* Br. at 12.) He also contends that the District Court did not conduct a proper colloquy under *Faretta v. California*, 422 U.S. 806 (1975) and its progeny. While we have some reservations about the procedures by which the District Court inquired into Morris' reasons for his dissatisfaction with Fetterhoff—and thus highlight them with an extended discussion—we find Morris' arguments to raise no nonfrivolous grounds for appeal.

The Sixth Amendment contains both a right to counsel and a right to proceed *pro se*. *See United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002). Defendants must affirmatively and unequivocally assert the right to proceed *pro se*, and district courts must establish that a defendant's request is voluntary, knowing, and understanding. *Id.* at 130–31. Because a defendant's request, immediately prior to trial, to substitute counsel or proceed *pro se* likely implicates a continuance, the district court is required to conduct a dual inquiry. *Id.* at 132; *see also United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982). The district court must first "engage in at least some inquiry," *Welty*, 674 F.2d at 187, with which to "ascertain the defendant's reasons for his dissatisfaction with counsel," *Peppers*, 302 F.3d at 132. Alternatively, if the court is made aware of the reasons for the defendant's dissatisfaction with counsel, it may rule without more. *Welty*, 674 F.2d at 188

13

(quoting *Brown v. United States*, 264 F.2d 363, 369 (D.C. Cir. 1959) (en banc) (Burger, J. concurring in part)).

If the defendant can show good cause, the district court must "grant a continuance and appoint new counsel, unless the defendant expressly wishes to proceed *pro se*." *Id.* We have previously defined good cause as, *inter alia*, "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict with the attorney." *United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995) (citing *Welty*, 674 F.2d at 188; *McMahon v. Fulcomer*, 821 F.2d 934, 942 (3d Cir. 1987)). Where no good cause is shown, the district court is required to inform the defendant that he can "proceed with current counsel, or represent himself." *Id.* We review a district court's legal conclusions *de novo*, including whether it properly fulfilled its duties under *Welty*. *See Goldberg*, 67 F.3d at 1097. We review a district court's decision whether to appoint substitute counsel for abuse of discretion. *Id.* (citing *McMahon*, 821 F.2d at 943; *Welty*, 674 F.2d at 190).

Second, if the defendant elects to represent himself, the district court must ensure that such decision "is intelligently and competently made." *Welty*, 674 F.2d at 187. In doing so, the following *Faretta* inquiry requirements must be satisfied:

> 1. The defendant must assert his desire to proceed *pro se* clearly and unequivocally.
> 2. The court must inquire thoroughly to satisfy itself that the defendant understands "the nature of the charges, the range of possible punishments, potential defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved."
> 3. The court must "assure itself" that the defendant is competent to stand trial.

14

*Peppers*, 302 F.3d at 132 (footnote and citations omitted) (quoting *Virgin Islands v. Charles*, 72 F.3d 401, 404 (3d Cir. 1995)). "A defendant who chooses to represent himself must be allowed to make that choice, even if it works 'ultimately to his own detriment.'" *Id.* at 130 (quoting *Faretta*, 422 U.S. at 834).

i)     Welty*'s First Line of Inquiry*

On October 25, 2012, Morris wrote to the District Court claiming that Fetterhoff was ineffective and requesting substitute counsel. Specifically, Morris alleged that Fetterhoff's motions for continuances violated his right to a speedy trial.[7] In another letter on November 15, 2012, Morris generally complained that he mistrusted Fetterhoff and that he was derelict in his duties.[8] However, this time Morris did not request substitute counsel. Rather, Morris expressed his desire to proceed *pro se*: "The purpose of this missive is to inform you of how I wish to implement one of the rights thats [sic] entitled to me, as a citizen of this great land, so that you . . . can get the process started for me to actually exercise my right to represent myself as pro se counsel, during my trial." (*Pro Se* Br. Ex. H.) He concluded, stating, "I know my case better than Mr. Fetteroff [sic], so I should be the one defending my freedom." (*Id.*)

---

[7] On October 22, 2012, Morris had also written to the District Court indicating that he did not want any more continuances, which he suggested were interfering with his right to a speedy trial. (Letter from Miguel Junior Morris to District Court at 1, Oct. 22, 2012, ECF No. 41.)

[8] After the trial, but prior to sentencing, Morris sent three letters requesting that the District Court appoint substitute counsel. In these letters, Morris cited additional reasons for his dissatisfaction: counsel's refusal to send him all copies of his discovery, counsel's alleged involvement in the prosecutor's "forgery," (*Pro Se* Br. Ex. J.), counsel's failure to file certain motions, (*id.* Ex. K.), a lack of meaningful communication, and counsel's alleged threats against Morris and his family, (*id.* Ex. L.)

15

Morris' request appeared reluctant, however. He seemed to note the difficulty of proceeding *pro se* and accused the District Court of coercing this decision because it had not appointed substitute counsel:

> The decision to act as pro se counsel is a very complex-ed [sic] concept to try to decipher, yet due to the fact that I just dont [sic] trust my advocate, my decision to represent myself seemed like the right move to make, especially when my freedom is at risk. I consider your actions, of not helping me obtain new counsel, after I declaired [sic] to you of how my attorney was being a derelict of his duty towards me, as coercing me to make this decision.

(*Id.*)

On November 20, 2012, the District Court issued an Order acknowledging the substance of Morris' letters and declaring that "[t]hese events require a hearing to determine whether new counsel should be appointed, and/or whether the defendant is serious about going to trial pro se and understands the implications of such a decision." (Order at 1, Nov. 20, 2012, ECF No. 44.). The hearing occurred on November 28, 2012, six days prior to the December 4, 2012 trial. Despite noting in its Order the potential need to assess whether new counsel should be appointed, the District Court was initially reluctant to discuss the reasons for Morris' substitution request:

> THE COURT:  Is it still your desire to proceed pro se in this case?
> THE DEFENDANT:  That's correct.
> THE COURT:  Because you're not satisfied with Mr. Fetterhoff?
> THE DEFENDANT:  Well, first of all, he violated my Sixth Amendment right.
> THE COURT:  I don't want to hear that.
> THE DEFENDANT:  Okay.
> THE COURT:  I just want you to answer my questions.
> THE DEFENDANT:  I'm just giving you why I did it for.

(Supplemental App. at 2–3.)

16

During the colloquy, Morris raised the subject again:

Q. In light of the penalties that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and give up your right to be represented by a lawyer?

A. Your Honor, I really would like another lawyer. I don't want Mr. Fetterhoff because every time I told him to do something, he just -- I told him to get me a private investigator. He denied me that. I told him I don't want no continuance on my case. He still continued -- he violated my Sixth Amendment right for a speedy trial. So what's the point of me having this gentleman here if he's not going to represent me the way he should?

Q. Okay. Well, what you have to understand is that I cannot judge Mr. Fetterhoff's performance as your defense lawyer at this point. If you're convicted, that is a matter that can be reviewed, and I will then determine whether or not any of the complaints that you have raised are valid.

But at this point you have not shown sufficient reasons for me to appoint another attorney for you. You have to understand that an attorney does not have to do everything you want him to do. What he has to do is what, in his judgment, is in your best interest. So if he refuses to get you a private investigator, there must be a reason that he has for that. . . .

….

Q. I'm just telling you that under all the circumstances, I don't think you have presented the Court with a valid reason at this point for me to appoint another attorney.

What I will do, however, is appoint Mr. Fetterhoff as standby counsel to be here during the trial, and if you wish to, you can consult with him about anything that might come up during the trial about which you might want to talk to him about.

(*Id.* at 9–10.)[9]

_____

[9] Morris' *pro se* brief purports to quote an exchange between Morris and the District Court, however we have been unable to locate this dialogue anywhere in the record. The source Morris cites—Document 46—is his waiver of his right to trial by jury, not a transcript. (App. at 12.) We are left to assume that, despite his use of quotation marks, Morris is paraphrasing the above exchange. Also, although Morris suggests that the hearing occurred on November 11, 2012, we assume he is referring to the hearing which took place on November 28, 2012. Morris writes:

During the hearing of November 11, 2012 (Doc. 46), Appellant attempted to inform the district court as to the substance of the conflict[.] Appellant stated "between my lawyer, and the prosecution they both are

The hearing called by the District Court occurred less than one week before trial, thus implicating its duties under *Welty*. The District Court was well aware of Morris' complaints regarding Fetterhoff's continuances, which he referenced in three prior letters. Morris' November 15, 2012 letter raised other general reasons for his dissatisfaction with Fetterhoff, and he expressed another reason during the hearing—Fetterhoff's alleged failure to hire a private investigator as requested. The District Court then explicitly ruled that Morris had failed to show "sufficient reasons" to appoint substitute counsel and explained its rationale. (*Id.*)

This case does not require us to decide whether the District Court should have engaged in *Welty*'s first line of inquiry or whether Morris' letters "clearly stated" his reasons so that the District Court could "rule without more." *Welty*, 674 F.2d at 187; *see also United States v. Salemo*, 61 F.3d 214, 221 (3d Cir. 1995) (finding *Welty* inquiry did not require discussion of reasons for continuance request to obtain new counsel where defendant's reasons were "clearly stated"). Even assuming the District Court was

---

> violating my 6th Amendment right to a speedy trial, and also I asked my attorney to inform the court of the need for a private investigator to discover necessary facts for a[n] adequate defense, and my attorney stated to me that he needed permission from the prosecution. The district court then stated "what ever [sic] conflict you, and your lawyer have that's between you, and your lawyer." Appellant then stated "I don't want Mr. Fetterhoff as my attorney, because he's using his position to gain a tactical advantage on me." The district court then replied "I'm still going to keep him on as stand by counsel."

(*Pro Se* Br. at 12.) Finally, we note that it is unclear where the first quote ends because Morris did not use a close quotation mark.

required to engage in *Welty*'s first line of inquiry, it properly adhered to the substance—if not the form—of its duty.

The preferred procedure under *Welty* is for the district court to determine whether good cause exists for the defendant's dissatisfaction with counsel first, and then, if necessary, inquire into whether the defendant's waiver of counsel is knowing, understanding, and voluntary. *See, e.g.*, *Peppers*, 302 F.3d at 132; *Welty*, 674 F.2d at 187–88. Although at the outset of the hearing the District Court was reluctant to entertain Morris' rationale for wanting substitute counsel (beyond the detail provided in his letters),[10] it ultimately ascertained and ruled upon Morris' reasons for his dissatisfaction. *See Peppers*, 302 F.3d at 132. Though its inquiry was modest, the court did engage "in at least some inquiry." *Welty*, 674 F.2d at 187. Due to the District Court's efforts and Morris' letters, we are not left to conduct our review "in the total absence of any inquiry into the cause of [Morris'] dissatisfaction [with] no way of knowing whether [Morris] may have had some valid ground for seeking a substitution of counsel." *Id.* at 190; *see also McMahon*, 821 F.2d at 944 (district court violated defendant's constitutional rights where it failed to engage in "*any* on-the-record inquiry as to the reasons for the

_____

[10] We find the District Court's initial reluctance difficult to explain given that its Order specifically suggested that Morris' letters required a hearing "to determine whether new counsel should be appointed." (Order at 1, Nov. 20, 2012, ECF No. 44.) Although we find the District Court ultimately fulfilled its duties under *Welty*'s first line of inquiry, the record gives the appearance of confusion over the nature of those duties. Specifically, the District Court told Morris that "I cannot judge Mr. Fetterhoff's performance as your defense lawyer at this point. If you're convicted, that is a matter that can be reviewed, and I will then determine whether or not any of the complaints that you have raised are valid." (Supplemental App. at 9.) As our main discussion makes clear, however, a district court in this situation does have a duty to determine whether a defendant has good cause for his dissatisfaction with counsel.

defendant's dissatisfaction with his existing attorney"). After properly concluding that good cause did not exist, the District Court's remaining duty under *Welty*'s first line of inquiry was to "inform the defendant that he [could] either proceed with current counsel, or represent himself." *Peppers*, 302 F.3d at 132. The District Court did so—in fact, it gave Morris the best of both worlds, permitting him to represent himself and appointing Fetterhoff as standby counsel. Thus, no nonfrivolous argument exists to challenge the District Court's adherence to its duties under *Welty*'s first line of inquiry.

Furthermore, no nonfrivolous argument exists to challenge the District Court's exercise of discretion in denying Morris' request for substitute counsel. We agree that Morris' attorney did not have to "do everything [Morris] wanted him to do." (Supplemental App. at 9.) Nothing in the record indicates a "conflict of interest, a complete breakdown of communication, or . . . irreconcilable conflict." *Goldberg*, 67 F.3d at 1098. "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

ii)     Welty*'s Second Line of Inquiry(*Faretta *Inquiry)*

Morris also claims that the District Court failed properly to discharge its duties under *Faretta* (and *Welty*'s second line of inquiry) because (i) his asserted desire to proceed *pro se* was not clear and unequivocal, and (ii) his waiver of counsel was not knowing and voluntary due to the District Court's failure properly to advise him. *See Peppers*, 302 F.3d at 132. These claims raise no nonfrivolous arguments for appeal.

20

Morris contends that he only reluctantly proceeded *pro se* after the District Court denied him substitute counsel, and therefore his request to proceed *pro se* was not clear and unequivocal. The record somewhat supports this position. As noted, his November 15 letter blamed his decision to proceed *pro se* on the District Court's "coercion." (*Pro Se* Br. Ex. H.) Also, Morris expressed reluctance to proceed *pro se* during the colloquy.

> Q.    In light of the penalties that you might suffer if you're found guilty and in light of all the difficulties of representing yourself, do you still desire to represent yourself and give up your right to be represented by a lawyer?
> A.    Your Honor, I really would like another lawyer.

(Supplemental App. at 9.)

When a defendant's language "casts doubt upon the voluntariness of his request" to proceed *pro se*, we have noted that "a defendant will not normally be deemed to have waived the right to counsel by reluctantly agreeing to proceed *pro se* under circumstances where it may appear that there is no choice." *Salemo*, 61 F.3d at 221 (citing *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 755–56 (2d Cir. 1975)). However, district courts need not be manipulated into appointing new counsel. *Id.* Rather, a defendant's apparent reluctance to proceed without counsel "should . . . alert[] the court to the need to inform the defendant of the pitfalls and technicalities of" proceeding *pro se*. *Id.*

The District Court fulfilled this duty. It conducted a thorough colloquy which addressed all of the requirements outlined in *Peppers* and clearly advised Morris of the risks of proceeding *pro se*. (*See* Supplemental App. at 3–9 ("I must advise you that in my opinion, a trained lawyer would defend you far better than you can defend yourself. . . . I

21

strongly urge you not to try to represent yourself.").) Morris again reiterated his request

to proceed *pro se* even after the District Court denied his request for substitute counsel:

> Q.     Do you have any questions or do you want me to clarify or explain
> further anything that we've discussed here this morning?
> A.     No.
> Q.     All right. Are you making this decision [to proceed *pro se*] freely
> and does it reflect your personal desire, subject, of course, to what you've
> said about wanting another lawyer?
> A.     Yes.

(Supplemental App. at 11.)

Additionally, the District Court appointed Fetterhoff as standby counsel. It

discussed with Morris the option of using Fetterhoff at trial and then arguing ineffective

assistance, if necessary. Morris opted not to, only permitting Fetterhoff to conduct three

cross-examinations. Any challenge on appeal to the District Court's *Faretta* inquiry

would be frivolous.

### III.     CONCLUSION

For the foregoing reasons, we will grant counsel's motion to withdraw and affirm

the Appellant's conviction, the District Court's judgment and its sentence.